[Civ. No. 21142.   First Dist., Div. One.   Apr. 8, 1963.]

GERALD MACKEN, Plaintiff and Appellant, v. JOAQUIN MARTINEZ, Defendant and Respondent.

Thomas A. Wahl and Reith & Wahl for Plaintiff and Appellant.

Howard A. Potts for Defendant and Respondent.

BRAY, P. J.—Plaintiff appeals from a judgment against defendant in the sum of $10.

## QUESTION PRESENTED

In this action under section 16601, Business and Professions Code, for violation of a noncompetition agreement in a sale of goodwill of a business, is plaintiff entitled to more than nominal damages?

## RECORD

March 17, 1959, plaintiff and defendant, partners in the operation of a bar and restaurant near Sacramento known as "The Clouds" dissolved their partnership, defendant selling out to plaintiff. The written agreement executed by them provides in pertinent part: "I agree not to enter into the off-sale or on-sale liquor or beer business either as an owner, part-

owner or employee within a five mile radius of . . . [The Clouds], for a period of five years."

On October 3, 1960, plaintiff brought this action alleging that defendant actively engaged in the sale of alcoholic beverages within the 5-mile radius and that thereby plaintiff's business was damaged in the sum of $25,000. Defendant denied the allegations of breach of the agreement.

The court found that in April 1959 defendant and Charles Christie tentatively decided on a new joint venture in the bar and restaurant business. (Christie had been defendant's partner in The Clouds prior to plaintiff.) Before learning of the anticompetition agreement Christie had acquired a site about a quarter of a mile from The Clouds. Christie had intended operating a beer and pizza parlor there, but on obtaining a liquor license decided to operate it as a bar. Christie employed defendant to assist him in arranging the bar and setting up the equipment generally; also to train a bartender and get the place known as The Velvet Hammer started. The bar opened in October 1959. For the first week of its operation defendant was present in the bar to assist Christie. Defendant received no wages and did not engage in any contacts with customers. The court then found that defendant's conduct did not violate the agreement.

The court further found that in April 1959 Christie organized a corporation to operate The Velvet Hammer. In August a permit to issue shares in the corporation was obtained. One-half, or 103, of these shares were issued in defendant's wife's name. Defendant did not believe that this constituted a violation of the agreement. In October 1959, upon receipt of a letter from plaintiff's attorney protesting the wife's stock ownership, defendant's wife sold her shares back to Christie. The court found this sale to be a bona fide transaction with adequate consideration.

The court then found certain employment of defendant outside the 5-mile zone. On May 15, 1960, defendant commenced work as a bartender at the Los Robles Motel; the bar there is located 5.7 miles from The Clouds, by the shortest route, but by a straight line (radius) is slightly less than 5 miles therefrom. However, the court found that plaintiff had consented to the employment of defendant by the motel, and that such employment did not violate the agreement.

The court further found that there is no evidence that defendant ever actively solicited a single customer of The Clouds for The Velvet Hammer or for any other bar where

defendant was employed; and that there is no evidence that plaintiff lost any business at The Clouds as a result of defendant's acts.

The court found that the ownership by defendant's wife of stock in The Velvet Hammer corporation constituted a violation of the agreement by defendant, but that such breach was neither extensive, nor wilful, and did not cause plaintiff any damage. The court then gave plaintiff judgment for $10.

## NOMINAL DAMAGES

Plaintiff first contends that the finding that defendant did not breach the agreement when he was employed by Christie to assist in the commencing of operations at The Velvet Hammer, is not supported by the evidence. This contention is meritorious. The evidence shows without contradiction that within a month after making the agreement defendant agreed with Christie to a joint venture in the bar and restaurant business. Christie then ''employed'' defendant to assist him in arranging the bar, setting up the equipment, training a bartender and generally helping to get the business started.

Hurt, who was bartender at The Velvet Hammer when it first opened and for six months thereafter, testified that he was hired by both Christie and defendant. Hurt took orders from defendant as long as Hurt was there. Defendant at night worked in The Velvet Hammer office preparing the payroll. Defendant broke Hurt in.

The court's conclusion that defendant's action in connection with the preparation of The Velvet Hammer and its operation was not a violation of the agreement is erroneous. There is no conflict in the evidence as to defendant's activities. Most of that evidence came from the testimony of defendant and Christie. It is clear that in April 1959 Christie and defendant agreed to join in the venture of a bar business and started to look for a location. April 29, 1959, they caused a corporation to be formed called Chrismar (obviously a combination of their two names), the stated purpose of the corporation being to engage in the business of on-sale dispensing of alcoholic beverages, operating a bar, etc. Christie put up $10,000 and defendant put up $10,000. While negotiating for a site defendant told Christie of the noncompetition agreement. It was then decided to issue the corporate stock, 103 shares to Christie and wife and 103 shares to defendant's wife. Permit for this issue was obtained August 11.

It was then decided to build on property belonging to Christie. Defendant did not assist in the construction of the building but according to Christie advised "sink locations, electric outlets, how many stations I needed at the bar and lay-out of the bar and some interior decorations. . . ." Defendant "bought chairs, carpeting, all the appliances, bar cases, even mixers for the bar." For his services Christie paid defendant $125 per week for about three months and $115 per week for another three months, and his expenses. At no time did defendant work at the bar but in the first week after The Velvet Hammer opened "he was there constantly . . . trouble shooting. . . . He helped the first week constantly and helped select a manager." Christie's business was that of a general contractor. He stated that he was "a green pea in the [bar] business" and that defendant knew the business. "I just hired him. We recognized that fact that he could not serve liquor there because he would be in violation of the agreement." Defendant was not paid anything after the bar opened. However, he made out the payroll and the checks for Christie to sign. Christie testified that defendant's wife held the stock but that he did business with defendant. For some time after The Velvet Hammer opened, defendant, at Christie's request, would stop by daily 15 or 20 minutes "to see if there was any trouble. If there was trouble he could phone" Christie. Defendant received no pay for this service.

When defendant was asked the reason for his stock in the corporation being in his wife's name, he said, "there is no reason for it actually. My health for one thing." Defendant made up the payroll for some seven months after the opening without compensation. After the letter from plaintiff's counsel was received, defendant's wife on October 30 sold the stock back to Christie for $10,000.

It is patent from the undisputed evidence that defendant's activity in the preparation of The Velvet Hammer for opening and in its operation for several months thereafter constituted a serious violation of the noncompetition agreement, and that the court's determination that such conduct did not constitute a violation of the agreement cannot stand.

The court found that while the stock ownership by defendant's wife constituted a violation of the anticompetition agreement, the breach was "neither extensive or willfull." The latter part of this finding must fall. The evidence is without contradiction that defendant's money purchased the stock and the only reasonable deduction that can be made

from the evidence is that the stock was placed in the wife's preparation and the operation of The Velvet Hammer. While in October, defendant's wife started to dispose of the stock to Christie (the actual transfer did not take place until January 1960) the harm had then been done.

Christie's testimony indicates clearly that he would not have constructed The Velvet Hammer nor operated it had it not been for the fact that he had defendant to plan it, get it started, and help to manage it. He testified that he is now waiting for the expiration of the anticompetition contract when he intends to start a bar business with defendant.

Thus, it appears that in determining the question of damages, the trial court viewed the evidence from the standpoint that defendant's violation of the agreement was an exceedingly minor one, and hence that the loss of business which plaintiff experienced after the opening of The Velvet Hammer could not possibly be attributed to such a minor violation.

We will now examine the evidence concerning damages in the light of the serious violation by defendant of the noncompetition agreement.

■ In a case of this kind, " '. . . the damages are rarely susceptible of accurate proof; but the measure, expressed generally, is the value of the business lost to plaintiff—not the gain of defendant, which may be more or less than plaintiff's loss; though such gain may be considered in evidence, it should be shown to correspond in whole or in part with the loss of plaintiff.' " (*General Paint Corp.* v. *Seymour* (1932) 124 Cal.App. 611, 615-616 [12 P.2d 990].)

■ It is true that, as the court found, there is no evidence that defendant actively solicited a single customer of The Clouds for The Velvet Hammer. But this fact alone does not justify a finding that plaintiff was not damaged by defendant's acts. Nor does the fact that defendant at no time sold liquor in The Velvet Hammer justify it. The average sales at The Clouds for the 10 weeks prior to the opening of The Velvet Hammer was $478.13 per week higher than the average sales for the 10 weeks following. Plaintiff's net profits similarly dropped. The auditor's testimony confirms these figures. A reasonable inference from that difference in sales is that the competition of The Velvet Hammer caused at least a substantial portion of that loss. Some of the military personnel who had worked part time as bartenders at The Clouds, worked as bartenders for The Velvet Hammer after

it opened. It is true that in the same month that The Velvet Hammer opened, a bowling alley cocktail bar also opened, and may have had an effect on The Clouds' sales. Likewise, in September 1959 the N.C.O. Club at the air force reservation about two miles from The Clouds, was completely remodeled. These places may also have had some part in the decrease of plaintiff's business, but that they were solely responsible for it, is not a reasonable deduction.

Plaintiff testified that The Clouds had "a neighborhood business" and that "nearly all of them one time or another went to The Velvet Hammer." Plaintiff named six examples of The Clouds' "clientele" patronizing The Velvet Hammer.

■ As said in *Zinn* v. *Ex-Cello-O Corp.* (1944) 24 Cal. 2d 290 [149 P.2d 177], "One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness." (Pp. 297-298.)

Plaintiff concedes that beginning in 1960 the addition of other bars in the area, a fire at The Clouds, and difficulty with cooks and bartenders, made it no longer determinable as to the effect of The Velvet Hammer on his business. But in view of the rule set forth in *Zinn, supra,* there is no reason why a court, looking at the decrease in sales and in net profits in 1959, from the viewpoint that defendant's acts in creating, and in effect managing, the competitive The Velvet Hammer, were of considerable importance in its business, could not reasonably estimate the effect in money damages of defendant's acts for the period October through December 1959, still giving full cognizance to the other competing factors. As defendant's wrongful conduct made the exact ascertainment of damages difficult, he cannot complain because the court must make an estimate of the damage and not an exact computation, provided, of course, that the estimate is a reasonable one.

■ The trial court in its opinion stated as one reason for the decrease in business and profits, that plaintiff was comparatively inexperienced in the bar business. This circumstance would hardly account for the fact that from the time plaintiff took over the sole management of The Clouds in April, the sales did not diminish greatly until the month of November 1959, the first full month after the opening of The Velvet Hammer. Nor would it account for the fact that the sales dropped from $8,038.59 in October, to $6,445.01 in November, and to $6,651.25 in December.

To give plaintiff merely nominal damages under the circum-

stances of this case is to completely emasculate the anticompetition agreement solemnly entered into between the parties.
As said in *Smith* v. *Mendonsa* (1952) 108 Cal.App. 2d 540, 543 [288 P.2d 1039], "The case comes within the rule stated in 25 Corpus Juris Secundum, 'Damages,' page 815, that when it clearly appears that a party has suffered damage a liberal rule should be applied in allowing a court or jury to determine the amount, and that, given proof of damage, uncertainty as to the exact amount is no reason for denying all recovery."

The appeal from the order denying new trial is dismissed. The judgment is reversed with directions to try the issue of damages solely. Appellant will recover costs.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied April 26, 1963, and respondent's petition for a hearing by the Supreme Court was denied July 3, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.