[Civ. No. 20315. First Dist., Div. Two. May 23, 1963.]

XUM SPEEGLE, INC., Plaintiff and Respondent, v. MARK S. FIELDS et al., Defendants and Appellants.

550

Bert W. Levit, Victor B. Levit, Long & Levit, Jacob Abramson and Abramson & Bolz for Defendants and Appellants.

Rosendale & Glikbarg, John C. Rosendale, Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Plaintiff and Respondent.

SHOEMAKER, J.—This is an appeal by defendants Mark S. Fields and Growers Insurance Agency from a judgment in favor of plaintiff Xum Speegle, Inc., in an action for unfair competition and breach of fiduciary duty.

In this suit, defendant Fields was charged with wrongfully breaching his fiduciary duty as a director and officer of plaintiff corporation by establishing defendant Growers Insurance Agency, a corporation, and by entering into direct competition, in the general insurance business, with plaintiff; and further, that he had by means of confidential information obtained during his long association with plaintiff, openly, persistently and continuously solicited its customers and had thereby diverted them to defendant Growers. Plaintiff prayed for a temporary and permanent injunction restraining defendants from continuing to compete against plaintiff; for an order requiring defendants to deliver to plaintiff all documents pertaining to plaintiff's business; for an order impressing a trust in plaintiff's favor upon all insurance policies written by defendants; for an accounting; and for damages in the amount of $500,000.

Defendants denied the material allegations of the complaint, and affirmatively raised the defenses of unclean hands, estoppel, and laches.

After a lengthy trial, the court found that plaintiff was a California corporation authorized to transact a general insurance business within the state, and having its principal place of business in Salinas; that on June 29, 1949, defendant Fields was duly elected a member of plaintiff's board of directors and vice president; that defendant Fields never resigned from either position prior to the filing of the complaint, and remained under a fiduciary duty to plaintiff corporation at all

times; that on November 28, 1956, defendant Fields formed Growers Insurance Agency, to engage in the general insurance business in Salinas and elsewhere, in direct competition to plaintiff; that sometime in October or early November of 1956, defendant Fields began wilfully and intentionally to solicit and divert insurance business from plaintiff to defendant Growers; that all such business would have inured to plaintiff's profit except for defendant Fields' act of breaching his fiduciary duty to plaintiff; that by reason of such breach, plaintiff sustained a substantial and permanent loss of insurance clients and profits which it would otherwise have earned; that defendant Growers knowingly permitted defendant Fields to violate his fiduciary relationship with plaintiff and also participated therein so as to receive business profits wrongfully diverted from plaintiff; that the allegations of defendants' answer to the effect that the president of plaintiff had promised to enter into a stock purchase agreement with defendant Fields but had subsequently refused to do so, were untrue; that plaintiff was entitled to an accounting of all insurance commissions diverted to defendant Growers; that the insurance clients so diverted would otherwise have remained clients of plaintiff for an average period of three addditional years; that the accounting ordered by the court showed that plaintiff had sustained damages in the amount of $72,641.38.

Judgment was accordingly entered in plaintiff's favor. The judgment was secured by a trust imposed for a period of five years upon 43 specified accounts of clients diverted from plaintiff to defendant Growers.

■ Appellants first contend that the evidence was insufficient to support the court's finding that appellant Fields was an officer and director of respondent corporation at the time that he engaged in soliciting and diverting respondent's former customers to appellant Growers. They assert that the evidence conclusively established that Fields had already resigned as an officer and director of respondent corporation at the time that he solicited customers on behalf of Growers. Such being the case, appellants contend that Fields' conduct was legally proper, and that he was subject to the same rules that govern the conduct of an ordinary employee who resigns, establishes an independent business, and enters into competition with his former employer.

This contention is without merit. Although the evidence bearing upon Fields' alleged resignation from respondent corporation was sharply conflicting, there was substantial evi-

dence in support of the finding that he never relinquished his position as a director or officer. Appellant Fields' testimony was to the effect that he had never been informed that he had been elected a director of respondent corporation, and that to his knowledge he had never served in that capacity. Although he did admit that he had acted as respondent's vice president, he testified that on November 30, 1956, he had informed respondent's president, Mr. Speegle, that he was severing all connections with respondent.

On the other hand, testimony in support of the judgment shows that appellant Fields had been elected a director and officer of respondent corporation at the first meeting of its board of directors held on June 29, 1949; that he thereafter entered upon his duties as vice president and general manager of respondent; that his business cards designated him as respondent's vice president, and he was introduced to respondent's customers as its vice president or director; that the minutes of respondent's board of directors showed that Fields had attended meetings of the board and had participated as a director in its decisions, and had, on June 1, 1953, signed a waiver of notice of a special meeting of the board.

We find testimony also that early in November 1956, Fields informed Mrs. McMahan, a fellow employee of respondent, that he planned to leave respondent and go into business for himself. He also informed her that he *had already contacted* all of respondent's big accounts and had secured their promise to stay with him when he had established his own business. On November 28, 1956, Fields formed appellant Growers, and then, two days later, he first told Mr. Speegle, respondent's president, that he intended to establish a competing business. He did not inform Mr. Speegle at that time or on any subsequent occasion that he was resigning as a director or officer. At a stockholders' meeting of respondent held on August 17, 1957, a man bearing a proxy signed by Fields was present. At a subsequent stockholders' meeting held on August 24, 1957, a proxy was again present and in possession of a signed authorization from Fields. At this meeting, an election of directors was about to take place and Fields' proxy nominated Fields as a director. He also suggested that cumulative voting be utilized, and inquired when Fields would be able to obtain respondent's financial statement. Mr. Speegle, upon realizing that he would be unable, under cumulative voting, to remove Fields as a director, adjourned the meeting. No further di-

rectors' or shareholders' meetings were held during 1957 or 1958.

This evidence amply suffices to support the court's finding that Fields' oral resignation on November 30, 1956, was ineffective to terminate his status as a director and that he continued to hold that position at the time that the instant litigation was commenced.

▮ It is settled that a director or officer of a corporation may not enter into a competing enterprise which cripples or injures the business of the corporation of which he is an officer or director. (*Hall* v. *Dekker* (1941) 45 Cal.App.2d 783, 787 [115 P.2d 15]; *Daniel Orifice Fitting Co.* v. *Whalen* (1962) 198 Cal.App.2d 791, 800 [18 Cal.Rptr. 659].) ▮ An officer or director may not seize for himself, to the detriment of his company, business opportunities in the company's line of activities which his company has an interest and prior claim to obtain. In the event that he does seize such opportunities in violation of his fiduciary duty, the corporation may claim for itself all benefits so obtained. (*New* v. *New* (1957) 148 Cal. App.2d 372, 384 [306 P.2d 987]; *Industrial Indem. Co.* v. *Golden State Co.* (1953) 117 Cal.App.2d 519, 533 [256 P.2d 677].) The evidence overwhelmingly supports the court's determination that appellant Fields was guilty of precisely such a breach of his fiduciary obligation to respondent.

Appellants next contend that a customer's volunary transfer of business from a corporation to a former employee, officer and director of the corporation, is entirely proper. Here again, appellants overlook the express finding that Fields was not a "former" director at the time he engaged in the active solicitation of respondent's customers. ▮ Under the rule of the authorities cited above, it is apparent that a director need not utilize force or coercion upon the customers of his corporation in order to be guilty of a breach of the fiduciary relationship.

▮ Appellants next assert that respondent's consent and failure to object after obtaining knowledge of the competition from Fields constituted a waiver and estoppel and barred legal action by respondent. This argument cannot be sustained. The only instances of "waiver" upon which appellants rely are (1) a letter sent by respondent, on March 18, 1957, to the various insurance companies which it represented, and (2) the fact that respondent was allegedly aware of Fields' competition as early as January 1, 1957, but made no active objection prior to commencing the instant proceeding.

An examination of respondent's letter of March 18, 1957, reveals that it was not a letter of consent to appellants' activities, but was, to the contrary, a letter of objection. We do not consider that this letter can by any means be construed as a waiver of respondent's right to proceed against appellants. Similarly, the mere fact that respondent made no active objection to appellants' conduct cannot be deemed a waiver and estoppel. ■ The waiver of a right cannot be established without a clear showing of an intent to relinquish such right, and doubtful cases will be decided against a waiver. (*Church* v. *Public Utilities Com.* (1958) 51 Cal.2d 399, 401 [333 P.2d 321].) ■ In addition, a waiver will not be implied contrary to the intention of the party whose rights would be injuriously affected unless by his conduct the opposite party was misled, to his prejudice, into the honest belief that such waiver was intended. (*Craig* v. *White* (1921) 187 Cal. 489, 498 [202 P. 648].) Appellants have certainly made no such showing.

■ Appellants' next contention is that the damages awarded respondent were totally unjustified in view of the evidence showing that respondent's net profit actually increased after appellant Fields left to establish his own agency. They further assert that any damages awarded ought to have been based upon the net rather than the gross profit wrongfully diverted from respondent to appellants. This contention is unsound. The mere fact that respondent's net profits increased after appellant Fields left sheds little light on the actual damage which respondent sustained in terms of lost accounts which would otherwise have inured to its benefit. It is entirely conceivable that the increase was due to sources utterly unrelated to the accounts diverted by appellants. In any event, it is apparent that respondent's net income depended primarily upon the amount which it chose to allocate, in a given year, to its officers' salaries and bonuses. During the fiscal year ending June 30, 1954, for example, respondent's gross income was $90,806.64. The amount allocated to officers' salaries and bonsues was $68,195.34, and other expenses totaled $19,582.82. Net income for that year was $3,028.48. In the fiscal year ending June 30, 1959, gross income was only $78,-533.79. Since officers' salaries and bonuses were only $26,200, and other expenses were $30,476.03, the net income was $21,-857.76, a figure considerably higher than in the fiscal year ending June 1954. Under such circumstances, it is apparent that respondent was not deprived of its right to damages by the mere fact that its net profits did not decline after appellant

Fields left. It is far more important to note that its gross income did decrease.

◼ As for appellants' contention that the damages awarded ought to have been based on net rather than gross income, it must be noted that respondent's operating expenses and overhead, other than officers' salaries and bonuses, remained relatively fixed and constant over the years. Under such circumstances, it was a question for the trial court whether the gross profits involved would also constitute the net profits and whether respondent's operational expenses would have continued in an equal amount even if appellants had not diverted many of the accounts which it had previously held. (*Walpole* v. *Prefab Mfg. Co.* (1951) 103 Cal.App.2d 472, 482-483 [230 P.2d 36]; *Phalanx Air Freight, Inc.* v. *National etc. Freight Corp.* (1951) 104 Cal.App.2d 771, 775 [232 P.2d 510]; *Tomlinson* v. *Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462, 474-475 [2 Cal.Rptr. 310].) The trial court's implied finding to that effect must be upheld.

◼ Likewise, this case is subject to the rule that one whose wrongful conduct has rendered difficult the ascertainment of damages cannot complain because the court must make an estimate of the damages and not an exact computation. (*Zinn* v. *Ex-Cell-O Corp.* (1944) 24 Cal.2d 290 [149 P.2d 177]; *Macken* v. *Martinez* (1963) 214 Cal.App.2d 784, 790 [29 Cal.Rptr. 867].)

◼ Appellants next assert that no damages ought to have been awarded respondent for the loss of those clients who would not, under any circumstances, have continued their association with respondent after appellant Fields left respondent's employ. Appellants rely upon the testimony of 11 former clients of respondent to the effect that even in the absence of appellants' improper solicitation, they would have terminated their accounts with respondent when appellant Fields ceased to remain in respondent's employ.

Appellants overlook the fact that the trial court made specific findings to the effect that each of the clients diverted by appellants would have remained with respondent had it not been for appellant Fields' breach of fiduciary duty in soliciting respondent's customers while he was still serving as a member of its board of directors. Such findings are in direct contradiction to the testimony upon which appellants rely. Their argument thus amounts to the contention that the trial court was not entitled to disbelieve appellants' witnesses. Such is not the rule. ◼ A trial judge is not required

to blindly believe a witness nor to find in accord with his testimony merely because such testimony is uncontradicted or unimpeached by the party against whom he testified. (*Kurtz v. Kurtz* (1961) 189 Cal.App.2d 320, 324-325 [11 Cal.Rptr. 230].) ▉ In the instant case, the testimony upon which appellants rely was in actuality nothing more than conjecture offered by witnesses who had already transferred their insurance accounts from respondent to appellants.

▉ Appellants next assert that the trial court improperly based its award of damages upon an accounting which exceeded the scope of the order authorizing it to be made. Appellants point out that the court originally ordered an accounting only of appellants' unemployment disability accounts, comprehensive liability accounts, and fire insurance policies on the installment plan. Although the accounting actually prepared considered other additional items and reviewed plaintiff's Exhibits Nos. 75, 76 and 77 in their entirety, the court nevertheless chose to use it as the basis for its award of damages.

▉ Appellants further assert that the trial judge met with the referee, after submission of the case, and discussed the issue of damages. Appellants contend that this constituted the taking of evidence out of court without the consent of the parties.

▉ We do not feel that appellants were in any way prejudiced by the fact that the referee considered Exhibits Nos. 75, 76 and 77 in addition to those items specifically mentioned in the original order appointing him. All three exhibits had been introduced into evidence and the trial judge had already stated that his award of damages would be based upon those exhibits. Appellants made no objection to this procedure. The referee's accounting was in actuality no more than a mathematical summation and reconciliation of these exhibits. The effect of those adjustments made by the referee was to reduce respondent's claims by an amount in excess of $4,000.

▉ As for appellants' contention that the trial judge improperly took additional evidence out of court without the consent of the parties, it may be noted that this point was thoroughly discussed at the hearing on appellants' motion for a new trial, wherein the trial judge stated, "There is certainly no testimony taken from Mr. Kasavan [the referee]; simply and merely a discussion as to what was required of him as an expert, is all." Such procedure was clearly proper.

Appellants' final contention is that the trial court failed to make findings of fact on numerous material issues raised at

the trial. Appellants assert, more specifically, that the court made no findings on the defenses of estoppel, unclean hands or laches; no findings that appellant Fields had resigned his position with respondent, that respondent's former customers had voluntarily transferred their accounts to appellants, or that respondent's profits had increased after appellant Fields established the Growers agency. They further complain of a lack of findings as to the operating expenses of appellants, and as to the specific accounts transferred from respondent to appellants.

Turning first to the lack of a finding on the issue of estoppel we have heretofore noted that there was no evidence upon which such a finding could have been based. It is settled that a party may not complain of the court's failure to make a finding which would necessarily have been adverse to him. (*London Guar. & Acc. Co.* v. *Las Lomitas School Dist.* (1961) 191 Cal.App.2d 423, 426 [12 Cal.Rptr. 598].) This rule is equally applicable to the court's failure to find on the issue of laches. As for the alleged failure to find on the defense of unclean hands, it must be noted that this defense was based primarily upon the allegation that Mr. Speegle, respondent's president, had induced appellant Fields to join his firm by falsely representing to Fields that he would subsequently enter into a stock purchase agreement with Fields. The trial court made an express finding that no such promise had been made. Similarly, a finding that appellant Fields had resigned his position with respondent would have been in direct conflict with the court's finding that Fields was an officer and director at all times mentioned in the complaint. A finding that respondent's former customers had voluntarily transferred their accounts to appellants would have been immaterial if not in direct conflict with the finding that appellants had intentionally solicited and diverted accounts which would otherwise have inured to respondent's profit. A finding that respondent's net profits increased after appellant Fields established his own business would also have been immaterial. As was pointed out earlier, such increase could have been derived from sources totally unrelated to the accounts diverted to appellants. A finding as to the operating expenses of appellants would have been immaterial in determining what damages were sustained by respondent. Findings as to the specific accounts wrongfully diverted from respondent to appellants would appear unnecessary in view of the fact that

all of the accounts so diverted were enumerated in plaintiff's exhibits, upon which the referee based his accounting. The court made an express finding that its award of damages was based upon the accounting. No useful purpose would be served by making detailed findings on every item covered by that accounting.

We note that the notice of appeal inadvertently states that defendants appeal from judgments entered on May 29, 1961, and June 5, 1961. There was only one judgment entered herein on June 5, 1961. The only document filed on May 29, 1961, was the findings of fact and conclusions of law.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied June 10, 1963, and appellants' petition for a hearing by the Supreme Court was denied July 17, 1963.