GINA WILSON, aka REINA FUCHIGAMI, Appellant, *v.* PACIFIC MAXON, INC., a California Corporation; EDWARD MAXWELL and BETTY MAXWELL, Respondents.

No. 15016

August 24, 1984                    686 P.2d 235

[Rehearing pending August 9, 1985]

*Ronald J. Logar,* Reno, for Appellant.

*Gary R. Silverman, Mary Anne Decaria,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from a judgment awarding respondents $76,329.00 plus twelve percent (12%) interest from October 17, 1977. For the reasons set forth hereinafter, the judgment is affirmed, as modified.

Respondents Pacific Maxon, Inc. and Edward and Betty Maxwell (hereinafter referred to collectively as PMI) purchased an operating brothel from appellant Gina Wilson. At the time of purchase, the brothel was fully furnished and stocked with food and liquor. After PMI learned that Wilson had altered the appraisal report on the business, it instituted this action seeking rescission of the parties' sales contract and restitution of the purchase price. Wilson counterclaimed to foreclose on the property, which was then in default.

The district court, despite finding that Wilson had in fact intentionally misrepresented the value of the business by altering the appraisal report, ordered PMI to surrender the premises

to Wilson due to the default.[1] The court reasoned that PMI had not justifiably relied on the altered report, because PMI had independent indications of the value of the business. PMI appealed that judgment to this Court.

While the appeal was pending, PMI returned the brothel to Wilson. By all accounts, the premises were in a "shambles" after PMI vacated. Witnesses described torn out bathroom and lighting fixtures, burned drapes and bathtubs, holes in the walls, missing furniture and linens, exhausted food and liquor supplies and open gas valves which had filled the premises with propane gas.

After PMI's appeal was heard by this Court, we reversed in part and remanded the case in Pacific Maxon, Inc. v. Wilson, 96 Nev. 867, 619 P.2d 816 (1980). Upon remand, the district court ordered rescission of the parties' contract as well as briefing on the issues of return of PMI's down payment and Wilson's offsets thereto. The case was tried before Judge McKibben on those limited issues. The court concluded that PMI had deposited $153,493.00 in connection with the purchase of the brothel. The court also determined that Wilson was entitled to the following offsets: $30,000.00 for the fair rental value of the premises during PMI's occupation; $37,164.00 for damages incurred restoring the premises to their pre-sale condition; and $10,000.00 for punitive damages for willful and malicious removal of property from and damage to the brothel. Wilson, therefore, was deemed to owe PMI $76,329.00 plus prejudgment interest at twelve percent (12%) from October 17, 1977. Wilson now appeals that judgment.

Wilson first contends that the evidence supports her entitlement to increased offsets representing compensatory damages. We have carefully reviewed the record on appeal and have determined that there is substantial evidence in the record to support the findings and judgment of the district court. Indeed, the trial judge is to be commended for his painstaking effort in balancing the parties' competing claims. The findings and judgment in this respect, having substantial support in the record, will not be set aside on appeal. Pace v. Linton, 97 Nev. 103, 625 P.2d 84 (1981).

Wilson's second contention is that the district court erred by reducing her offset for punitive damages due to her fraudulent

---

[1] The district court judge who initially heard this case is not the same judge who rendered the judgment presently before this Court.

alteration of the appraisal report. After finding that PMI willfully, maliciously and without legal justification removed property from and damaged property in the brothel before vacating the premises, the court determined punitive damages were appropriate in the amount of $10,000.00. The court added that the "damages would have been more substantial" in the absence of Wilson's fraud and misrepresentations with respect to the altered appraisal report. Wilson primarily argues that with regard to punitive damages our stated policies "to punish the wrongdoer . . . and to deter others from acting in similar fashion," Bader v. Cerri, 96 Nev. 352, 358, 609 P.2d 314, 318 (1980), would be offended if punitive damages were subject to reduction by reason of any fault of the injured party. We disagree. We hold that the trier of fact, in assessing punitive damages, may consider "all the circumstances attending the particular transaction involved, including any mitigating circumstances which may operate to reduce without wholly defeating such damages." Hannahs v. Noah, 158 N.W.2d 678, 683 (S.D. 1968), quoting 22 Am.Jur.2d *Damages* § 263; *accord* Rinaldi v. Aaron, 314 So.2d 762, 763 (Fla. 1975). The award of $10,000.00 as puntive damages, moreover, is not so inadequate as to shock the conscience of this Court. Truckee-Carson Irrigation District v. Baber, 80 Nev. 263, 268, 392 P.2d 46, 48 (1964).

Wilson's third contention is that the district court erred by awarding PMI prejudgment interest at the rate of twelve percent (12%) when the statutory rate was seven percent (7%) at the time PMI filed its complaint. Wilson is correct. The twelve percent (12%) rate and the prior eight percent (8%) rate were made applicable only to actions filed *after* July 1, 1981 and July 1, 1979, respectively.[2] PMI filed its complaint in 1977 when NRS 99.040 provided for seven percent (7%) interest upon "judgments rendered by a court" on "all money from the time it becomes due."[3] Although NRS 99.040 did not specifically allow awards for prejudgment interest, the statute's provision

[2]*See* 1981 Nev. Stats. ch. 739, § 6, at 1859; 1979 Nev. Stats. ch. 448, § 6, at 831.

[3]In Bing Construction Company of Nevada v. Vasey-Scott Engineering Company, Inc., 100 Nev. 72, 74 n. 1, 674 P.2d 1107, 1108 n. 1 (1984), we stated that: "The interest to be awarded under NRS 99.040 is that which is statutorily provided for at the time the judgment is entered." By way of clarification, this statement merely reflects the principle that the interst to be awarded and included in the judgment shall be determined in accordance with applicable statutes and not necessarily by the current statutory rate in effect on the date judgment is entered.

for payment of interest "upon all money from the time it becomes due" contemplates judgments granting interest from the time money is due until the date of judgment. We have recognized, moreover, awards of prejudgment interest when the principal amount, due date and interest rate have been determined. Paradise Homes, Inc. v. Central Surety and Insurance Corporation, 84 Nev. 109, 116, 437 P.2d 78, 83 (1968). In the instant case, substantial evidence supports the district court's findings that Wilson, after receiving credit for offsets, owed PMI the principal amount of $76,329.00 and that this sum was due commencing October 17, 1977. As we have explained, the statutory interest rate was seven percent (7%). The judgment entered below, therefore, must be modified to provide for prejudgment interest at the rate of seven percent (7%) instead of twelve percent (12%). We have considered Wilson's other contentions and conclude that they are without merit.

Accordingly, this case is affirmed as modified and remanded to the district court for entry of judgment consistent with this opinion.