See also 673 F.Supp. 405.

**WOMEN'S FEDERAL SAVINGS AND LOAN ASSOCIATION OF CLEVE-LAND, an Ohio corporation and Federally Chartered Savings and Loan Association, Plaintiff,**

v.

**NEVADA NATIONAL BANK, a Nevada National Banking corporation, and Does I–XX, Defendants.**

**No. CV–R–82–360–ECR.**

United States District Court, D. Nevada.

Aug. 11, 1987.

Jack I. McAuliffe, Reno, Nev., for plaintiff.

Gary M. Nelson and James Walsh, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, JR., District Judge.

This case was tried before the Court from January 14 to January 16, 1985. The Court issued a Memorandum Decision and Order on April 19, 1985, entering judgment in favor of plaintiff in the amount of $3,918.63. The Court found that the defendant, Nevada National Bank ("NNB"), had breached the Loan Participation Agreement ("LPA") that the two parties had entered. The Court, however, found that the facts did not warrant rescission as a remedy.

The plaintiff, Women's Federal Savings and Loan Association ("WOFED"), appealed from the April 19, 1985, Order.

RESCISSION

The Ninth Circuit Court of Appeals reversed and remanded, finding that breaches by NNB of the LPA did warrant rescission.

It is now the duty of this Court to enter appropriate orders to effect the rescission. On April 1, 1987, the Court issued a minute order (docket # 19) requiring the parties to file points and authorities addressing the issue of what steps must be taken to effect rescission. The plaintiff filed points and authorities on May 8, 1987 (docket # 93). The defendant also filed points and authorities on May 8, 1987 (docket # 94). The plaintiff filed its reply to the defendant's points and authorities on May 26, 1987 (docket # 95). The defendant filed its reply to plaintiff's points and authorities on May 27, 1987 (docket # 97).

In essence, the LPA required WOFED to contribute $2.5 million of a $2.8 million loan made to John and Barbara Cavanaugh in the name of NNB. Under the contract WOFED received 10⅛% interest on the $2.5 million loan.

The Court finds that the rescission mandated by the Court of Appeals is effective as of November 5, 1982, the day on which the plaintiff filed its complaint. *See Wilson v. Pacific Maxon, Inc.,* 100 Nev. 479, 686 P.2d 235 (1984). Rescission of the LPA would be accomplished by putting the parties, as nearly as possible, in the positions they occupied prior to entering the LPA. This requires that the balance of the $2.5 million loan be returned to WOFED. The parties agree that in March, 1987, the defendant paid to WOFED the outstanding principal balance and accrued interest at the rate of 10⅛%.

The only remaining issue, then, is the appropriate interest rate.

The contractual interest rate, applicable during the time the LPA was in effect, was 10⅛%. That is the amount that WOFED earned on its loan of $2.5 million under the terms of the LPA prior to rescission of that contract. After November 5, 1982, the date of rescission, the issue of interest is an issue of prejudgment interest. After November 5, 1982, the LPA could have no effect on the parties' relationship. After that date, the statutory rate of prejudgment interest applies; the statutory rate in Nevada is 12%. *See* NRS § 99.040. *See also Wilson v. Pacific Maxon, Inc.,* 100 Nev. 479, 686 P.2d 235 (1984) (The statutory rate of prejudgment interest in Nevada after July 1, 1981, is 12%.).

In order to effect the rescission mandated by the Court of Appeals, NNB must pay to WOFED the difference between the statutory rate of interest (12%) and the contractual rate of interest (10⅛%) on the outstanding principal balance between November 5, 1982, and the date on which the balance was paid to WOFED. The plaintiff indicates that the difference is $211,090.06. The defendant does not take issue with that calculation.

Plaintiff also takes the position that in order to effect the rescission it is necessary that NNB pay to WOFED the ⅛% fee that NNB earned on the WOFED money be-

tween November 5, 1982, and the date on which NNB paid the principal balance to WOFED. The recovery contemplated in this regard by WOFED is not necessary to put WOFED in the position it was in prior to entering the contract. Rescission is accomplished if WOFED recovers its principal along with the appropriate interest. The appropriate interest is the contractual rate of 10⅛% prior to November 5, 1982, when the LPA is deemed to have been in effect, and the statutory rate of 12% for the time after rescission of the LPA and until the principal balance was paid to WOFED.

## DISGORGEMENT

The Ninth Circuit Court of Appeals reversed and remanded this Court's finding that disgorgement of profits earned by NNB is not warranted in this case. The Court of Appeals stated that the case is remanded "for reconsideration of the appropriateness of the remedy of disgorgement in light of the principles set forth in this opinion." *Women's Fed. Sav. and Loan Ass'n v. Nevada Nat'l Bank,* 811 F.2d 1255, 1260 (9th Cir.1987).

The Court of Appeals found that NNB violated a fiduciary duty not to compete with WOFED. The Court of Appeals said:

> Finally, it is a basic principle of trust law that a fiduciary should refrain from competing in any way with the beneficiary. *See, e.g., Xum Speegle, Inc. v. Fields,* 216 Cal.App.2d 546, 31 Cal.Rptr. 104 (1963) (a corporate director breaches his fiduciary duty when he acquires information about the business and then resigns and uses the information to develop a competing business); *Sauvage v. Gallaway,* 329 Ill.App. 38, 66 N.E.2d 740 (1946) (trustee of a billboard advertising business should be enjoined from operating competing business on his own account); 2 A. Scott, *The Law of Trusts,* § 170.23 (3d ed. 1967). NNB violated this basic fiduciary duty by extending more than $2 million in secondary financing to the Cavanaughs without informing WOFED and seeking its consent.

NNB protests that the secondary financing did not create a conflict of inter-est, because NNB's security interest pursuant to the second deed of trust was junior to WOFED's and would not compete with WOFED's in the event of a foreclosure sale. Short of a foreclosure sale, however, there is an obvious conflict of interest present when a cash-poor borrower is obliged to make separate monthly payments to both the beneficiary and the trustee. This is particularly true where, as here, the payment to the trustee is more than twice as large as the payment to the beneficiary.

*Women's Fed. Sav. and Loan Ass'n v. Nevada Nat'l Bank,* 811 F.2d at 1259.

The Court recognizes that there is language in the Court of Appeals' opinion which could be read to indicate that the question whether NNB breached its duty not to compete is left open on remand:

> If the district court finds that, by extending the unauthorized secondary financing, NNB was competing with its fiduciary, WOFED, disgorgement would not be an inappropriate remedy.

*Id.* at 1260. However, this Court's resolution of the issue whether NNB breached the duty not to compete, if indeed it remains an issue on remand, is guided significantly by the general tenor as well as by specific conclusions in the Court of Appeals' opinion. Specifically, this Court cannot ignore the Court of Appeals conclusion that "NNB violated this basic fiduciary duty [to refrain from competing in any way with the beneficiary] by extending more than $2 million in secondary financing to the Cavanaughs without informing WOFED and seeking its consent." *Id.* at 1259.

■ Thus, in view of the conclusions drawn by the Court of Appeals and in view of the record in this case, this Court finds, as apparently the Court of Appeals found, that NNB violated its fiduciary duty not to compete with WOFED by extending secondary financing to the Cavanaughs without informing WOFED and seeking its consent.

The next question, then, is the appropriateness of disgorgement of profits earned

by NNB as a remedy for NNB's violation of its fiduciary duty not to compete.

On this question, too, the Court of Appeals' opinion lends guidance:

WOFED also petitions the court to order NNB to disgorge the profits it made on the secondary financing it extended to the Cavanaughs. When a fiduciary's personal interests compete with those of the party to whom the fiduciary duty is owed, creating the risk that the needs of that party may be subordinated to those of the fiduciary, the slighted party may be awarded profits earned in the disloyal activity. *See* G. Bogert, *The Law of Trusts and Trustees* § 543(O) at 340 (rev. 2d ed. 1978); *see also Wilshire Oil Co. v. Riffe*, 381 F.2d 646, 650–52 (10th Cir.), *cert. denied*, 389 U.S. 822, 88 S.Ct. 50, 19 L.Ed.2d 75 (1967); *United States v. Bowen*, 290 F.2d 40, 44 (5th Cir.1961) ("It is the action of undertaking to act in self-interest while compelled to act solely for the master's interest which subjects the servant to the duty to account.... The master as the party whose trust has been betrayed has the widest relief. He is entitled to all of the fruits of the servant's dereliction.").

*Id.* at 1260.

Disgorgement of profits is an equitable remedy. As with any equitable remedy, this Court exercises discretion in granting or denying relief. *See Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 550–553, 57 S.Ct. 592, 600–602, 81 L.Ed. 789 (1937); *Miller Oil Co. v. Abramson*, 252 Iowa 1058, 109 N.W.2d 610, 613 (1961); *Swartz v. Atkins*, 204 Tenn. 23, 315 S.W.2d 393, 395 (1958). Courts have stated, however, that neither bad faith on the part of the trustee, nor damage on the part of the beneficiary is a prerequisite to the equitable remedy of disgorgement of profits. *See United States v. Bowen*, 290 F.2d 40, 44 (5th Cir.1961).

■ In this case, in view of the nature of NNB's breach of fiduciary duty, which breach has been found by the Ninth Circuit Court of Appeals and by this Court, this Court finds that disgorgement of profits by NNB is an appropriate remedy. *See Bow-en*, 290 F.2d at 44 ("It is the action of undertaking to act in self-interest while compelled to act solely for the master's interest which subjects the servant to the duty to account.... The master as the party whose trust has been betrayed has the widest relief. He is entitled to all of the fruits of the servant's dereliction.") The remedy of disgorgement, as applied in this case, will require NNB to pay to WOFED an amount equal to the profit earned by NNB on the secondary financing provided by NNB to the Cavanaughs.

The issue left for this Court, then, is the amount of profit earned by NNB in providing the secondary financing to the Cavanaughs. A hearing is necessary in order to make this factual determination. This matter will be heard at 10:30 o'clock a.m. on September 8, 1987. Each side will be allowed three (3) hours to address this issue. The parties may present evidence and legal argument.

## ATTORNEY'S FEES

On December 6, 1985, this Court issued an Order awarding plaintiff attorney's fees in the amount of $17,500.00. The Court based the award on NRS § 18.010(2)(a), which provides that a court may make an allowance of attorney's fees to the plaintiff as prevailing party when the plaintiff has not recovered more than $10,000 (The legislature has raised this figure to $20,000.).

■ In view of the Court of Appeals' mandate that the plaintiff be awarded rescission of the contract, it is plain that the plaintiff's award is now greater than $10,-000.00 and indeed greater than $20,000.00. In measuring a recovery for the purpose of determining whether attorney's fees are proper under NRS § 18.010(2)(a), it is appropriate to look to equitable recovery. *See Locken v. Locken*, 98 Nev. 369, 650 P.2d 803 (1982). Because of the magnitude of the plaintiff's recovery in equity in this case, the statutory basis for the award of attorney's fees has dissolved.

The December 6, 1985, Order and the resulting Judgment awarding plaintiff attorney's fees must be vacated.

ORDERS

IT IS, THEREFORE, HEREBY OR-DERED that the Clerk shall enter judgment in favor of plaintiff and against defendant in the sum of $211,090.06. This sum represents prejudgment interest which remains unpaid.

IT IS FURTHER ORDERED that an evidentiary hearing is set for Tuesday, the 8th day of September, 1987, at 10:30 o'clock a.m. Each party shall be allowed three (3) hours to present evidence and argument on the issue designated in the above discussion.

IT IS FURTHER ORDERED that the Court's Order of December 6, 1985, and the resulting Judgment awarding attorney's fees of $17,500.00 to plaintiff be VACATED.