[Civ. No. 10835.   Third Dist.   June 5, 1964.]

CLIFFORD H. KNUDSEN, Plaintiff and Appellant, v. C. McCOY HILL et al., Defendants and Respondents.

Wilkins, Little & Mix and Esther Mix for Plaintiff and Appellant.

Edward J. Anzore for Defendants and Respondents.

PIERCE, P. J.—In this action by plaintiff Knudsen for the conversion by defendants Hill of a pledged promissory note belonging to plaintiff then having a face value of

$24,674.20, judgment was for plaintiff, but the court fixed the value of the converted note at $16,052.26.[1]

Knudsen appeals, his sole contention being that the court should have allowed the full face value of the converted note. ■ We sustain this contention, holding that damages for the conversion of a secured promissory note where there is no personal liability for deficiency judgment on the part of the maker are properly measured by the value of the security, this for reasons hereinafter to be explained. There is no controversy on appeal as to the following facts:

The Hills had loaned $18,000 to Knudsen to be used to build a motel. It was constructed and sold by Knudsen to Mr. and Mrs. Cracraft and Mr. and Mrs. Bringle who, as a part of the purchase price, gave Knudsen their promissory note for $26,500 (the "Cracraft note") secured by a third deed of trust on the motel. The Cracraft note was later pledged by Knudsen to the Hills to secure the indebtedness owed by Knudsen to them.

On January 9, 1961, the Hills wrongfully converted the Cracraft note by selling it for the sum of $16,052.26 to a daughter of the Cracrafts, who apparently bought as agent of the latter. The trial court, in its memorandum opinion, states: "As to this phase of the case, the Hills acted in a most secretive and unfair manner by indicating that nothing had transpired with respect to the Cracraft note and deed of trust and that they still wanted to discuss the settlement of the debt owing them as late as May 18, 1961."

Three weeks before the sale of the Cracraft note (December 23, 1960) Knudsen had tendered payment in full of the balance ($11,800) of his indebtedness to the Hills.[2]

On appeal it is not disputed that Knudsen under these facts was entitled to recover the statutory damages for wrongful conversion of the Cracraft note. The sole question is whether the trial court awarded damages by proper measurement thereof.

---

[1]It was conceded that at the time of the alleged conversion the balance of a note owed by Knudsen to the Hills which the converted note was pledged to secure was (without interest) $11,800. In the conclusions of law this amount was offset against the amount allowed for the conversion.

[2]The note from Knudsen to the Hills was, by its terms, usurious. The court, however, found circumstances estopping Knudsen from claiming penalties for usury. No interest, however, was allowed to be offset in the judgment against the amount found to be due plaintiff for conversion of the Cracraft note.

The basic statutory measure of damages in California for noncontractual wrongs is that stated in Civil Code section 3333, to wit: "the amount which will compensate for all the detriment proximately caused thereby." By Civil Code section 3336: "The detriment caused by the wrongful conversion of personal property is presumed to be: First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted;[3] and Second—A fair compensation for the time and money properly expended in pursuit of the property."

Civil Code section 3356 provides: "For the purpose of estimating damages, the value of an instrument in writing is presumed to be equal to that of the property to which it entitles its owner."

A note in 85 American Law Reports 2d 1349, entitled "Measure of damages for conversion or loss of commercial paper" collects cases throughout the United States on this subject. ▆▆▆ These show that such damage is to be measured by value at time of conversion and, although the rule is variously expressed, *face* value of the bill or note is, prima facie, its *true* value. ▆▆ Evidence is admissible to establish that actual value is a lesser sum than face value but the burden is upon defendant so to prove. This is the rule in California. (*Revert* v. *Hesse*, 184 Cal. 295 [193 P. 943]; *Meyer* v. *Thomas*, 18 Cal.App.2d 299 [63 P.2d 1176].)

▆▆ A qualification is expressed in the note in 85 American Law Reports 2d, *supra* at page 1352 that damage is measured in terms of the value *of the bill or note itself* only when the instrument "imposes a personal liability upon the maker or drawer." "Where a promissory note imposes no personal liability on the maker, but is collectible only from property mortgaged to secure its payment, *the measure of damages is the value of the security as of the date of the*

---

[3]The alternative provision commencing with "or, an amount sufficient to indemnify," etc., was substituted in 1931 (Stats. 1931, ch. 633) for a provision allowing recovery for the highest market value between time of conversion and the verdict, at the injured party's option, thus giving him the right to delay litigation for as long as the statute of limitations permitted, thus allowing him to gain the advantages of a rising market without any risk of loss from a falling one. (See *Wong* v. *Paine, Webber, Jackson & Curtis*, 208 Cal.App.2d 17, 20 [24 Cal.Rptr. 821].)

*conversion."* (Italics supplied.) (*Op. cit.* p. 1352.) One case is cited as authority for the rule, *Wylde* v. *Schoening*, 96 Wash. 86 [164 P. 752]. The rule is apposite here because the Cracraft note is a "purchase price obligation," and in the event of foreclosure no deficiency judgment could have been recovered by the holder against the makers after the security had been exhausted. (Code Civ. Proc., § 580b.)

Although no California case has been cited or found where the court was called upon to consider the rule just expressed the language of Civil Code section 3356 quoted above is broad enough to permit its application. That section in terms provides that the value of the "instrument in writing" is a sum equal to the "property to which it entitles its owner," which, in the case of a mortgage note is a lien on the mortgaged real property to the extent of the debt secured.

Since the ultimate test of a proper award is "the amount which will compensate for all the detriment proximately caused" by the wrong, what fairer yardstick could there be to measure loss when the wrong committed is the wiping out of plaintiff's security, his sole source of redress, than the sum equal to its value?[4]

We hold that this properly measures plaintiff's loss and that the rule should have been applied here as the measure of plaintiff's damage.

The converted note bore interest at the rate of 8 per cent per annum. It was payable in installments of $200 per month or more (including interest) for the first nine months, after which installments increased to $300 monthly. Unless payments were accelerated the note would have been paid off in 1970. The note included a provision for accelerated maturity in the event of default at the holder's option. At the time of the conversion the unpaid balance was, as stated above, $24,674.20.

As to the value of the motel securing the note, Mrs. Cracraft testified it was worth between $250,000 and $275,000 and that she had refused an offer of $285,000. Plaintiff, an experienced real estate broker—but not disinterested—valued it at $300,000. No evidence in the record of any lesser value has been pointed out to us. The two prior encumbrances aggregated $99,000. Thus the value of the security at the most

---

[4]With interest from date of conversion, together with "a fair compensation for the time and money properly expended in pursuit of the property." (See Civ. Code, § 3336.)

conservative appraisal was $151,000, *six times the face amount of the indebtedness secured,* $24,674.20. The latter sum then, together with interest from the date of conversion, should have been allowed as plaintiff's damages.

But even were we to assume that plaintiff's damage was to be measured by the value of the note itself, the same result would be reached. ▮▮▮ As stated above, a note's value is, prima facie, its face value and here we can find no substantial evidence to support a finding of a lesser value. The Hills, therefore, did not sustain their burden of proof. Actually, little evidence of value was produced by either side.[5]

The trial court in its memorandum states "[t]here is ample evidence to support" its finding "that the actual value of this note and *third* deed of trust was $16,052.26 on January 9, 1961." But in stating this, the court seems to have accepted as *actual* value the sales price ($16,052.26) under the transaction between the Hills and the Cracrafts by which the note was converted. This was not a sale on the open market between a buyer and seller, informed, willing, unpressured and dealing at arm's length. It was a deal described by the court as "secretive" and "unfair," a case of buyers who were makers buying for $16,052.26 a note and

---

[5]Mrs. Cracraft testified that in her opinion the note was worth its face value:

"Q. And the time you purchased the Note and Deed of Trust, what was the value of the Note in your opinion? A. It was $24,536.69. Q. In other words, in your opinion it was worth its face value, is that right? A. Well, yes. You can see, to me, it sure was, because—maybe not to other people that don't like to buy Third Mortgages, but to me it was."

Knudsen testified the note was "worth the face value, because as I say, it could be refinanced and a new first covering all of it. I would never have sold it under any circumstances."

There was evidence that both the Cracrafts and Bringles (the other makers of the note) were people of substantial worth. Evidence as to the solvency of the Cracrafts may be said to have been controverted to some extent by the fact of an early default in an installment payment for which foreclosure was threatened. On the other hand, Mrs. Cracraft explained this as arising from doubts whether her payments properly could be made to the Hills. In any event the default was cured and the note was current when converted.

There was also testimony by the Hills that they had tried unsuccessfully, before selling the note to the Cracrafts, to dispose of it elsewhere, but to say that this could be accepted as evidence of the actual value of the note (and deed of trust) would be tantamount to using unsuccessful efforts to dispose of stolen goods as proof of their depreciated value.

Mrs. Hill's testimony actually was that their earlier efforts to sell had been with Knudsen's permission. Had this been accepted by the trial court there would, of course, have been no conversion.

deed of trust both obviously and admittedly worth to them $24,674.20 (since it wiped out a fully secured obligation in that amount). And from the sellers' point of view they had no reason to bargain for a higher price, since they were obligated to pay over to Knudsen everything above $11,800, the amount of his debt to them.

The net result of the transaction and the result of the court's judgment was that the wrongdoer, the Hills, got all of the benefits sought by their wrongful conversion (payment of the full amount of the debt owed them) the wronged plaintiff, Knudsen, lost $8,621.94 of a fully-secured $24,674.20 obligation and the Cracrafts gained what Knudsen lost. This is *not* a recovery "which will compensate [plaintiff] for all the detriment proximately caused" by the conversion. It does not constitute "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of."

██ It may be conceded that it is usually difficult to prove the *actual* value of commercial paper. However, where a wrong has been committed and substantial damages have certainly been caused liberality should attend measurement of the amount thereof. This well-settled rule was recently restated in *Macken* v. *Martinez,* 214 Cal.App.2d 784, 791 [29 Cal.Rptr. 867].

The Legislature, in apparent recognition of the fact that there is usually no active market in which private noncorporate commercial paper can readily be bought and sold at its actual value, has adopted Civil Code section 3006 restricting the right of a pledgee of such evidences of debt to collection upon maturity. The same recognition, plus the rule of liberality as restated in *Macken, supra,* may be cited as reasons for the rules created by case law which we apply here.

The judgment is modified as follows: Plaintiff shall recover judgment against defendants in the sum of $12,874.20 (i.e., $24,674.20 less $11,800) together with interest thereon from January 9, 1961, to the date of the original judgment, May 2, 1963, at 7 per cent per annum, both of said sums to bear interest at the rate of 7 per cent per annum from said May 2, 1963, until paid. Plaintiff shall recover his costs on appeal.

Schottky, J., and Friedman, J., concurred.