[No. F027349. Fifth Dist., Jan. 25, 1999.]

TRIPLE A MANAGEMENT COMPANY, INC., Plaintiff and Respondent,
v.
LARRY F. FRISONE, as Cotrustee, etc., et al., Defendants and
Appellants;
STEWART TITLE OF MODESTO, Defendant, Cross-complainant and
Appellant;
WESTERN FARM CREDIT BANK, Cross-complainant, Cross-defendant
and Appellant.

LARRY F. FRISONE, as Cotrustee, etc., et al., Plaintiffs and Appellants,
v.
TRIPLE A MANAGEMENT COMPANY, INC., Defendant and
Respondent;
WESTERN FARM CREDIT BANK, Defendant, Cross-complainant and
Appellant;
STEWART TITLE OF MODESTO, Cross-complainant, Cross-defendant
and Respondent.

[No. F028879. Fifth Dist. Jan. 25., 1999.]

LARRY F. FRISONE, as Cotrustee, etc., et al., Petitioners,
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
TRIPLE A MANAGEMENT COMPANY, INC., Real Party in Interest.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IG and II.

522

## COUNSEL

Dietrich, Glasrud & Jones, Dietrich, Glasrud, Mallek & Aune and Bruce A. Owdom for Defendants and Appellants, for Plaintiffs and Appellants and for Petitioners Larry F. Frisone and Robert D. Frisone.

Alborg, Veiluva & Cannata, Thomas E. Alborg and Michael J. Veiluva for Defendant, Cross-complainant and Appellant, for Cross-complainant, Cross-defendant and Respondent and for Petitioner Stewart Title of Modesto.

Albert J. Berryman; Caswell, Bell, Hillison, Burnside & Greer, Robert K. Hillison and Robert A. Werth for Cross-complainant, Cross-defendant and Appellant and for Defendant, Cross-complainant and Appellant Western Farm Credit Bank.

Wild, Carter & Tipton and Steven E. Paganetti for Plaintiff and Respondent, for Defendant and Respondent and for Real Party in Interest Triple A Management Company, Inc.

## OPINION

**VARTABEDIAN, J.**—The assignee of a security interest in a deed of trust unilaterally signed an agreement subordinating the deed of trust to a subsequent deed of trust. Thereafter, the assignor paid its secured debt and the earlier deed of trust was reconveyed to it. When the trustor of the subsequent deed of trust defaulted, the assignor asserted its lien had first priority. However, the beneficiary of the subsequent deed of trust contended, in reliance on the subordination agreement, that it had first priority. Among other findings, the trial court determined the subordination agreement was ineffective. It entered judgments and awarded attorney fees in accordance with this underlying finding. Various parties have appealed from different aspects of the judgment. We affirm the judgment in its entirety.

### Facts and Procedural History

In 1988, Triple A Management Company, Inc. (hereafter Triple A) bought 140 acres near Kingsburg from Western Farm Credit Bank (hereafter Western). Western secured its purchase money loan of $504,000 to Triple A with a first deed of trust on the property. Triple A farmed the property.

Triple A agreed, in 1992, to sell 20.4 acres of the property to Greenwood Estates Associates (hereafter Greenwood) for $525,000. Greenwood promised to pay $100,000 as a down payment and to deliver a promissory note, secured by deed of trust on the property, in the amount of $425,000. As a condition of the sale, Triple A agreed to subordinate its security interest in favor of any future "development loan" not to exceed $1.6 million. Western agreed to release the 20.4 acres from its lien in return for assignment to it of the Greenwood promissory note and deed of trust as additional collateral for the original Triple A debt.

The parties opened an escrow at Stewart Title of Modesto (hereafter Stewart Title). We refer to this escrow as escrow 1, in keeping with the practice of the parties to this appeal. The escrow instructions directed Stewart Title "to prepare the necessary Assignment of Deed of Trust" so that Western's interest in the Greenwood debt could be recorded.

While its escrow with Triple A was pending, Greenwood agreed to sell the 20.4-acre parcel to Mark Sullivan.[1] The purchase price of $990,000 was to be paid by Sullivan's assumption of the Greenwood promissory note to Triple A, his execution of a new note to Greenwood in the amount of $340,000 secured by a third deed of trust on the property, and by payment of $350,000 cash obtained from a new loan.[2] Sullivan was to obtain the cash from the Frisones, private investment lenders who operated through several family trusts. The parties opened escrow for the resale of the 20.4 acres; that escrow was also with Stewart Title. Among the seller's escrow instructions was one directing that title would vest in Sullivan subject to "Deed of Trust to be of record at close of escrow in favor of [Triple A] and collaterally assigned to [Western] securing a loan in the amount of $425,000.00 . . . shall be . . . subordinated to the loan in favor of [Frisones]." The Frisones' escrow instructions directed Stewart to release the loan funds only when the Frisones' deed of trust would be the first priority lien on the property and when Stewart had issued a lender's title insurance policy insuring the Frisones' first lien status. We will refer to this escrow as escrow 2, as do the parties.

After a time, both escrows were assigned to the same escrow agent at Stewart Title, Carol Wheeler.

On July 6, 1993, Greenwood signed the note and deed of trust called for in escrow 1 (both the note and the deed of trust are dated June 14, 1993). Triple A signed a security agreement granting Western a security interest in the Greenwood note and deed of trust, and on August 3, 1993, Triple A executed a recordable assignment of the Greenwood deed of trust. We set forth the operative portions of that assignment verbatim. The assignment is on a preprinted form and was prepared by Stewart Title; preprinted portions are rendered in normal typeface, portions inserted by typewriter are indicated in italics, and handwritten portions are rendered in boldface.

---

[1]Sullivan was a nominal buyer acting on behalf of others. The details of the relationship between Sullivan and the others, Abourezk-Ray Real Estate Development, Investors Lending, Ron Shapazian and Lee Abourezk, are not relevant to the issues on appeal. Accordingly, we will refer to the aggregation, direct and remote parties to the purchase from Greenwood, as Sullivan.

[2]The escrow closing statement demonstrates Sullivan included in his financing various fees, commissions, and other charges (some which of were paid to those on whose behalf Sullivan acted). Thus, the total amount borrowed exceeded the purchase price.

"*Collateral*

"ASSIGNMENT OF DEED OF TRUST

"FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to *WESTERN FARM CREDIT BANK, a California corporation,* all beneficial interest under that certain Deed of Trust dated *June 14, 1993,* executed by *TRIPLE A MANAGEMENT COMPANY, INC., a California corporation,* Trustor, to *STEWART TITLE OF MODESTO, a California corporation,* Trustee, and recorded as Instrument No. **concurrently herewith,** 19*93*, in Book ___, Page ___, of Official Records in the Office of the County Recorder of *Fresno* County, State of California;

"TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust."[3]

Documents from escrow 1 were recorded on August 17, 1993. Among those recorded were the Greenwood deed of trust and the Triple A assignment of that deed of trust to Western.

As escrow 1 moved forward, Greenwood attempted to obtain Triple A's agreement to subordinate the Greenwood deed of trust to the proposed lien of the Frisones, although it is not clear exactly the level of detail of Greenwood's request. Triple A categorically refused to subordinate its interest because it did not want to reopen negotiations with Western.

After Triple A refused to subordinate its interest to the Frisones, Stewart Title prepared a subordination agreement using its standard preprinted form for signature by Western.[4] This document, dated August 4, 1993, was signed by Donald O'Dell, assistant vice-president, on behalf of Western on August 18, 1993, and recorded on August 23, 1993. The subordination agreement describes Western as the "present owner and holder of the [Greenwood] deed of trust and note" and states that the Frisones are expressly relying on the subordination in funding their loan to Sullivan. O'Dell testified that Greenwood's principal, Roger Rule, represented to him Triple A had agreed to the subordination. O'Dell also said Wheeler of Stewart Title told him the

---

[3]Although the parties do not base any of their arguments on this point, the assignment of deed of trust misidentified the deed of trust to be assigned. Greenwood, not Triple A, is the trustor in the Greenwood deed of trust.

[4]There was no evidence that Wheeler knew Triple A had refused to subordinate when she decided Western was the proper party to execute the subordination agreement. The evidence suggests a principal in Greenwood, Roger Rule, had told her Western would sign the subordination agreement, but Rule did not testify at trial. Apparently he had absconded.

subordination was that required by the original Greenwood/Triple A agreement. Nevertheless, the subordination agreement itself provides in boldface uppercase letters: "Notice: This subordination agreement contains a provision which allows the person obligated on your real property security to obtain a loan a portion of which may be expended for other purposes than improvement of the land." In addition, O'Dell signed a representation that he had read and approved the estimated closing statement for escrow 2, which had been delivered to him with the subordination agreement. The closing statement clearly disclosed that the new loan was for the purchase of the property. O'Dell testified at trial that he merely glanced at the documents before he signed them, on the assumption that Triple A would carefully scrutinize the subordination agreement he assumed would be presented to it.

On August 18, 1993, Sullivan executed a promissory note and deed of trust in favor of the Frisones and a note and deed of trust in favor of Greenwood. Western's subordination agreement was recorded and escrow 2 closed on August 23, 1993. Stewart Title issued to the Frisones a lender's title insurance policy insuring that, as of August 23, 1993, the Frisones' deed of trust enjoyed first priority among the deeds of trust recorded against the property.

After making one quarterly interest payment on the Greenwood-Triple A note, Sullivan defaulted on that loan. Western recorded a substitution of trustee and notice of default in September of 1994; in these documents Western asserted it was "the present Beneficiary" under the Greenwood deed of trust. In 1995, Triple A satisfied its original debt to Western; Western's assignee reconveyed to Triple A the Greenwood note and deed of trust.

On March 21, 1994, Triple A filed an action against the Frisones and Sullivan for a declaration that its lien on the 20.4 acres was superior to the Frisones' lien. Its amended complaint also alleged causes of action for negligence and breach of fiduciary duty against Stewart Title and Western. The Frisones filed an action for declaration of the priority of their deed of trust on January 4, 1995. The complaint also included related causes of action for injunctive relief and damages against Triple A, Western and its related entities, Sullivan and his related entities, and the Greenwood interests. Various defendants filed cross-complaints for damages and indemnity against each other. Pertinent to this appeal are the cross-complaints of Stewart Title and Western against each other. All of the actions were consolidated.

The Frisones moved for a preliminary injunction to prevent Triple A and Western from nonjudicially foreclosing on the Greenwood deed of trust.

Judge O'Neill denied the preliminary injunction and the Frisones appealed. (*Frisone* v. *Triple A Management Co.*, No. F023088.) By nonpublished opinion filed June 18, 1996, this court reversed the trial court and ordered issuance of the preliminary injunction.

While the preliminary injunction appeal was pending, Western moved for summary adjudication of several of the Frisones' causes of action. On June 20, 1996, Judge Quaschnick granted the motion in part, concluding that Western was entitled to judgment on the Frisones' count 3, breach of contract, because Western had not breached the subordination agreement.

Trial on the remaining counts began on September 10, 1996. Trial was before the court, sitting without a jury. Judge Kane bifurcated the issues for trial. The first portion of the trial concerned the declaratory judgment counts. On September 24, 1996, the court issued an oral statement of decision in favor of Triple A and against the Frisones. As restated in its October 18, 1996, memorandum of decision, the court concluded that the Frisones did not directly rely on Western's subordination agreement, since they did not know about it. To the extent Stewart was the Frisones' agent and did rely on the subordination agreement, that reliance was unreasonable because Stewart had actual knowledge that the assignment of the Greenwood deed of trust to Western was not a full assignment but was for security purposes only. Impliedly, the court concluded the security agreement did not empower Western unilaterally to subordinate the Greenwood deed of trust and Stewart would have discovered this if it had used due diligence to inquire about the "collateral" assignment of that deed of trust to Western.

The court then conducted the damages phase of the trial. After hearing from expert and other witnesses, the court filed a proposed statement of decision on December 3, 1996, which it made final on January 23, 1997. The court concluded Stewart Title was negligent in its preparation of the original collateral assignment and the subordination agreement. It held that Triple A was damaged by this negligence in that it was forced to incur attorney fees to protect its lien priority. The court concluded Western was negligent in executing the subordination agreement, but that this negligence did not proximately cause anyone loss. The court denied the new trial motions filed by Stewart Title and the Frisones by order dated March 5, 1997. The court denied Western's request for attorney fees from Stewart but awarded a portion of its attorney fees against Triple A.

Stewart Title and the Frisones filed timely notices of appeal. Western filed a timely notice of appeal from the denial of its request for attorney fees against Stewart Title. The appeals were consolidated.

While the appeal was pending, Stewart Title and the Frisones filed a petition for writ of mandate in this court seeking to vacate the trial court's order expunging a notice of lis pendens the Frisones had recorded on June 23, 1995. This court stayed the order expunging the lis pendens on July 31, 1997, and issued an order to show cause on September 26, 1997. Hearing on the order to show cause subsequently was ordered to occur at the time for oral argument on the merits of the appeal.

## Discussion

### I.  The Stewart Title and Frisone Appeals

#### A.  Issues Presented

Stewart Title and the Frisones (sometimes referred to collectively in this part I as appellants) primarily contend they were entitled to rely on the recorded assignment of the Greenwood deed of trust in seeking subordination from Western only. They contend the trial court charged them with knowledge in escrow 2 of unrecorded documents that were part of the unrelated escrow 1 in order to bar them from reliance on the recorded assignment of the Greenwood deed of trust.

Appellants also contend Western actually had the power to execute the subordination agreement under the terms of its security interest in the Greenwood promissory note and deed of trust. Finally, they contend Western breached the subordination agreement by representing that it owned the Greenwood deed of trust, if and to the extent it did not have the full power under the security agreement to subordinate that deed of trust.

Stewart Title also contends it should not have been required to pay Triple A's attorney fees under the "tort of another" doctrine since Triple A itself was at fault in creating the conflict that resulted in this litigation. This issue is addressed in the unpublished portion of this opinion.

#### B.  Good Faith Encumbrancers for Value

The Frisones and Stewart Title both contend the Frisones were good faith encumbrancers for value and, as such, were protected by the conclusive presumption that the recorded state of title to the property reflected the true state of title. Accordingly, they contend, the Frisones were entitled to rely on the subordination agreement signed by Western, since the recorded assignment of the Greenwood deed of trust established Western as the owner of the beneficial interest under that deed of trust. Further, they

claim the trial court erred in refusing to determine whether the Frisones were good faith encumbrancers; the trial court stated that such a determination was irrelevant.

"A good faith encumbrancer for value who first records takes its interest in the real property free and clear of unrecorded interests. (Civ. Code, §§ 1107, 1214; 3 Miller & Starr, Cal. Real Estate (2d ed. 1989) Recording and Priorities, §§ 8:2, 8:3, pp. 270, 273 [unrecorded instrument not enforceable against subsequent bona fide purchaser who first records].) 'An encumbrancer in good faith and for value means a person who has taken or purchased a lien . . . and who has parted with something of value in consideration thereof. [Citation.] . . . [A] *"good faith"* encumbrancer is one who acts *without knowledge or notice* of competing liens on the subject property. [Citations.]' (*Brock* v. *First South Savings Assn.* (1992) 8 Cal.App.4th 661, 667. . . .) If a trustee executes an unauthorized reconveyance and the trustor subsequently conveys the property, a grantee *who does not have notice* of the trustee's lack of authority receives title free and clear of the lien. (*Firato* v. *Tuttle* (1957) 48 Cal.2d 136, 139. . . .) Similarly, a junior lender has the right to rely on a state of record title which indicates that a senior lien will be satisfied out of the interests of all signatories to a senior promissory note. A secret agreement that the senior lien will be satisfied out of the interests of only some of the signatories is not binding upon the junior encumbrancer. (*Caito* v. *United California Bank* (1978) 20 Cal.3d 694, 702. . . .)" (*First Fidelity Thrift & Loan Assn.* v. *Alliance Bank* (1998) 60 Cal.App.4th 1433, 1440-1441 [71 Cal.Rptr.2d 295].)

Thus, it clearly is the law that, in the absence of conflicting knowledge, a good faith encumbrancer is entitled to rely on the recorded chain of title in determining from whom he needs to obtain a subordination agreement in order to establish his lien as the first priority deed of trust. The fact that the encumbrancer searches and evaluates the record through an escrow or title agent does not in any manner diminish his right to rely on the state of the record title. (See Civ. Code, § 1214.) Indeed, given the pervasive role of title companies as escrow agents in California, a contrary conclusion would substantially eviscerate Civil Code section 1214. We conclude the trial court erred in finding the Frisones did not rely on the state of the recorded chain of title.

Several limitations are inherent in the protection afforded a good faith encumbrancer for value, however; two such limitations are relevant in the present case. First, the subsequent encumbrancer is permitted only to rely on the recorded state of title as that state of title objectively presents itself: the subsequent encumbrancer is not entitled to view the record either through rose-colored glasses or with blinders on. That is, he is not entitled

to interpret ambiguities in his own favor nor is he entitled to ignore reasonable warning signs that appear in the recorded documents. Second, a lender is not entitled to ignore information that comes to him from *outside* the recorded chain of title, to the extent such information puts him on notice of information that reasonably brings into question the state of title reflected in the recorded chain of title. (*First Fidelity Thrift & Loan Assn.* v. *Alliance Bank, supra,* 60 Cal.App.4th at pp. 1443, 1445.)

In *First Fidelity,* an earlier lender erroneously reconveyed its deed of trust and that reconveyance was duly recorded. A new lender knew that the borrower had listed the earlier loan as an encumbrance of the property on his loan application, but its review of the record title disclosed the reconveyance. The new lender contacted the borrower's bank (which was not the earlier lender) and was told the earlier loan had been paid off. The new lender funded its loan and recorded its deed of trust. At no time did it contact the earlier lender to inquire about the status of the loan. (*First Fidelity Thrift & Loan Assn.* v. *Alliance Bank, supra,* 60 Cal.App.4th at pp. 1436-1438.) The earlier lender eventually discovered its mistake, filed a lis pendens, and successfully obtained an order rerecording its deed of trust as of the date of the lis pendens.

After the borrower defaulted on both outstanding loans, the earlier lender sued the new lender to establish the priority of its deed of trust. Losing in the trial court on summary judgment, the earlier lender appealed. The Court of Appeal recognized that in some circumstances information outside the chain of title (in this case, the borrower's loan application listing the earlier encumbrance) can operate to put a subsequent lender on notice of an unrecorded interest in the property if it has "knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact." (*First Fidelity Thrift & Loan Assn.* v. *Alliance Bank, supra,* 60 Cal.App.4th at p. 1443.) The court concluded, however, that this was a limited duty of inquiry that the new lender had discharged by its additional inquiry to the borrower and his bank. Accordingly, the court held, the new lender was entitled to first priority. (*Id.* at p. 1445.)

*First Fidelity* involved information generated by the subsequent lender outside the chain of title. In *Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520 [131 Cal.Rptr. 394, 551 P.2d 1226] the issue was whether parol evidence was admissible to establish a limitation on a recorded easement that was not explicit on the face of the recorded document. The easement, granted by appellants' predecessor in interest to respondents' predecessor in interest, granted a right to transport harvested timber across appellants' property. The easement was in gross, but the easement could only be transferred to an entity that owned at least one-third of the timber on

certain surrounding lands. (*Id.* at pp. 527-528.) A dispute arose when appellants learned that one respondent was transporting across appellants' property timber harvested at remote locations. Appellants contended the original grantors and grantees had intended the easement to be limited to the transport of timber harvested on the grantors' lands and those immediately surrounding. In granting summary judgment, the trial court concluded respondents were entitled to rely on the easement as recorded, since the language of the easement was clear and did not contain any such limitation. (*Id.* at p. 526.)

The Supreme Court reversed. It stated:

"Appellants also challenge the trial court's determination that [one respondent] was a bona fide purchaser. The trial court had based this determination upon an uncontradicted showing that [this respondent] 'had no knowledge of any interpretation other than the plain meaning of the document.' But the [easement] [had no 'plain meaning.'] Thus the issue is whether [respondent or its predecessor] are chargeable with notice of appellants' claims. . . . It has been said that: ' "In so far as a purchaser has actual or constructive notice of a conveyance or other instrument executed by one previously owning or claiming to own the land, he is charged with notice of all matters stated or referred to in such conveyance, which may possibly affect the title, and he is bound to make any inquiries or researches suggested by such statements or references." ' [Citations.]

"When a 'conveyance in a chain of title under which a purchaser for value claims shows on its face it is so ambiguous as to leave room for reasonable difference of opinion as to what was granted, or when the grant contains limiting or qualifying words sufficient to cast reasonable doubt on what was intended to be granted, the purchaser will be chargeable with notice of this ambiguity, and the effect of these limiting or qualifying words, and his rights, if controversy comes up, must be left to be determined by the courts, . . .' [Citations.]" (17 Cal.3d at p. 529.)

The court concluded that a triable issue of fact existed "as to whether [respondent] should have investigated any competing claims" under the easement. (17 Cal.3d at p. 529.)

■ Thus, the state of the law, as exemplified by *Buehler* and *First Fidelity*, is clear: if the reference to "collateral" in the title of the assignment of the Greenwood deed of trust and the reference to the assignment as additional security in the instructions provided to Stewart Title in connection with escrow 2 were sufficient to give the Frisones knowledge that they should have investigated Western's authority to subordinate that deed of trust, then the Frisones are chargeable with what a reasonable investigation would have revealed. "The constructive notice imparted by the recording of

a document has been extended to charge an intending purchaser [or encumbrancer] with a duty to investigate the rights afforded by an unrecorded document *referred to in* that recorded document." (*Gates Rubber Co.* v. *Ulman* (1989) 214 Cal.App.3d 356, 365 [262 Cal.Rptr. 630].)

Accordingly, we must determine whether these two documents—the recorded "collateral assignment" and the escrow instruction identifying the assignment of the Greenwood deed of trust as "collaterally assigned . . . securing a loan"—placed upon the Frisones a duty to inquire about the nature of Western's interest in the Greenwood deed of trust. If so, we must then determine what they would have found had they inquired:[5] if Western actually had the power to subordinate the Greenwood deed of trust, the knowledge with which the Frisones are chargeable merely authorizes the transaction that in fact occurred.

However, before we reach those issues, we must address two intervening points. First, both Stewart Title and the Frisones argue that knowledge obtained by Stewart Title should not be imputed to the Frisones. Second, the Frisones contend the trial court failed to make a finding that they were not good faith encumbrancers for value and the matter initially must be remanded for such a finding. We turn to those issues.

## C. *Stewart Title as the Frisones' Agent*

We agree, as Stewart Title and the Frisones argue, that the trial court attributed too broad a scope to the agency relationship between the two appellants. Thus, the trial court impermissibly imputed to the Frisones the knowledge Stewart Title obtained in escrow 1, as we will discuss below. Nevertheless, the trial court was correct in concluding that Stewart Title was indeed the Frisones' agent; the parameters of that agency relationship, although narrower than described by the trial court, are well established in California law. The limited question of importance to this appeal is whether, within the true scope of Stewart Title's agency, Stewart Title's knowledge of the contents of the escrow 2 instructions and the recorded documents in the chain of title for the property conveyed in escrow 2 are properly to be imputed to the Frisones. We will conclude such knowledge must be imputed to them.

The well-regarded treatise on California real estate law by Miller and Starr contains a detailed and extensive summary of the law of agency as it applies

---

[5]As Civil Code section 19 states: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

to real estate transactions and escrow agents. (See 2 Miller & Starr, Cal. Real Estate (2d ed. 1989) ch. 3, p. 2 et seq. [agency generally]; *id.* at § 5:21, pp. 438-442 [escrow agents]; 3 Miller & Starr, Cal. Real Estate, *supra*, § 8:56, p. 378; *id.* at § 8:61, p. 387 [notice imputed through agent].) ▮ The authors state:

"An escrow agent is employed by the parties to perform the concurrent conditions of the sales or loan transaction. The parties submit escrow instructions to the agent, and generally his duties are limited to the performance of the instructions. . . .

"As a general rule, knowledge acquired by an agent within the course and scope of his agency duties is imputed to the principal. Imputation is based on the theory that the agent will disclose to his principal that which he is obligated to disclose.

"As a dual agent for both parties, the knowledge of the escrow agent regarding matters within the same escrow is imputed to both parties to the escrow. . . .

"On the other hand, the escrow agent is only a limited or special agent, and his obligations to disclose matters to his principal are also limited. . . . [¶] . . . Based on this principle, knowledge acquired by the escrow agent beyond the scope of his limited agency is not imputed to either principal. . . .

". . . The knowledge of an escrow agent acquired in [an earlier] escrow where one principal [in a second escrow] is not a party is not imputed to the principal who is not a party to that [earlier] escrow." (2 Miller & Starr, *supra*, § 5:21, pp. 438-440, fns. omitted.)

▮ This rule concerning knowledge obtained in separate escrows is not merely one based on practical considerations, as Triple A suggests in attempting to distinguish cases cited by appellants. Thus, in discussing *La Mancha Dev. Corp. v. Sheegog* (1978) 78 Cal.App.3d 9 [144 Cal.Rptr. 59] and *Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67 [246 Cal.Rptr. 872], Triple A argues the separate escrows in those cases occurred months apart and may not even have involved the same employee of the escrow company. In the present case, Triple A argues, the simultaneity of the escrows and the singularity of the escrow officer render imputation of the knowledge permissible.

We disagree. ▮ The basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent

will be presumed to have fulfilled this duty. (Cf. *Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 547 [115 Cal.Rptr. 257]; *Jaffe* v. *Heffner* (1959) 173 Cal.App.2d 512, 518 [343 P.2d 374].) The scope of the imputation of knowledge is directly related to the scope of the duty arising from the agency agreement; it has nothing to do with whether the agent actually has the information in question or has it only constructively (see *Kirby* v. *Palos Verdes Escrow Co.* (1986) 183 Cal.App.3d 57, 65 [227 Cal.Rptr. 785]), or whether it is practical to expect the agent to remember something that happened months ago (see 2 Miller & Starr, *supra*, § 5:21, pp. 439-441).

██ Similarly, we reject Triple A's contention that the trial court did not in fact impute Stewart Title's knowledge gained in escrow 1 to the Frisones in escrow 2. The trial court stated: "Stewart was the Frisones' agent and to the extent [Western] misrepresented things to Stewart [in escrow 2], which Stewart <u>reasonably</u> relied upon, Frisones could properly seek damages against [Western] based on those misrepresentations. [¶] In this case, however, Stewart's reliance on [Western] was not reasonable at all. Stewart, through Wheeler, knew that [Western] was not the owner and holder of the Greenwood Note and deed of trust. Wheeler knew this because [Western's] escrow instructions [in escrow 1] so indicated." (Capital lettering omitted.)

Nevertheless, on appeal we review the trial court's result, not its reasoning. (*Belair* v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].) In this case, it is correct to impute to the Frisones knowledge of the two critical facts we have identified above. One fact, that Triple A had "collaterally assigned to [Western] securing a loan . . ." the Greenwood deed of trust, was contained in the escrow instructions *in escrow 2*. Subordination of that deed of trust to its own deed of trust was an express precondition to release of the Frisones' funds; the Frisones instructed Stewart Title to release the funds only if this precondition were accomplished. Accordingly, Stewart Title obtained that knowledge in the course of the agency for which the Frisones had employed it.[6] The second fact, that the assignment to Western was a "collateral assignment," was reflected in the chain of title to the property being transferred in escrow 2. As such, the statutes impose constructive knowledge of the contents of the assignment on Stewart Title as the Frisones' agent and on the Frisones directly. (See Civ. Code, § 1213.)

Accordingly, we conclude the Frisones had imputed and constructive knowledge of the two facts that we deem critical to the resolution of this case. We agree with appellants that the law does not permit us to impute to

---

[6]This knowledge is imputed due to Stewart Title's status as escrow agent, not because of its role as title insurer, as appellants contend. (Cf. *Lewis* v. *Superior Court* (1994) 30 Cal.App.4th 1850, 1856, 1869-1870 [37 Cal.Rptr.2d 63].)

the Frisones the *actual* knowledge Stewart Title may have had concerning the content of the underlying, unrecorded security agreement between Triple A and Western, nor of the content of the escrow instructions in escrow 1, because Stewart Title's actual knowledge of those matters was obtained outside the scope of its agency on behalf of the Frisones.

### D. *The Trial Court's Refusal to Make a Finding on Good Faith Encumbrancer for Value Status*

In response to Stewart Title's request for statement of decision, the court issued a proposed statement of decision on December 3, 1996. It subsequently reiterated that statement of decision after considering the parties' objections. Of particular relevance is the following passage (the format of the statement of decision is a restatement of Stewart Title's statement of the issue followed by the court's resolution of the issue):

"5. Whether [Western] and/or TRIPLE A should be estopped from claiming that [Western] was the owner of the entire beneficial interest of the GREEN-WOOD Deed of Trust.

"Neither should be estopped because neither STEWART nor the FRISONES reasonably relied upon TRIPLE A's execution of Exhibit No. 5 [the collateral assignment of deed of trust] or [Western's] execution of Exhibit No. 10 [the subordination agreement].

"6. Whether FRISONES are bona fide encumbrancers for value by virtue of their making the loan to SULLIVAN in Escrow No. 2.

"In view of the findings of fact and conclusions of law which this court has made, this is not a relevant issue."

■ The determination whether a party is a good faith purchaser or encumbrancer for value ordinarily is a question of fact; on appeal, that determination will not be reversed unless it is unsupported by substantial evidence. (*Hochstein* v. *Romero* (1990) 219 Cal.App.3d 447, 451 [268 Cal.Rptr. 202].) ■ Further, Code of Civil Procedure section 632 requires the court, upon request, to issue a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Failure to determine a material issue in a statement of decision can, in some circumstances, be reversible error if there is evidence that would support a finding in the opposing party's favor. (*Sperber* v. *Robinson* (1994) 26 Cal.App.4th 736, 745 [31 Cal.Rptr.2d 659].)

■ Since, in our view, the Frisones' status as good faith encumbrancers for value is a key issue in this case—dispositive, if it is resolved in the

Frisones' favor—we tread very cautiously in this area. If we took the trial court's conclusion that "this is not a relevant issue" literally and in isolation, we would be constrained to reverse the judgment and remand for a statement of decision on this issue if there was substantial evidence to support a finding in the Frisones' favor. (See *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130 [210 Cal.Rptr. 114].)

Viewing the trial court's conclusion in context, however, we must conclude the trial court did not simply refuse to decide the critical issue of the Frisones' status as good faith encumbrancers. Rather, the court decided a subissue of the good faith issue against the Frisones, and only then concluded the broader question was "not a relevant issue." We explain.

As noted in our earlier exposition of the good faith encumbrancer question, one cannot be afforded that status if he fails to investigate the state of title after he is put on notice (constructively) by recorded documents in the chain of title or (actually) by information acquired from any source that the state of title is questionable. (See p. 530, *ante.*) There was no evidence whatsoever that Stewart Title or the Frisones attempted in any way to investigate the meaning of the "securing a loan" and "collateral" information in their actual and constructive possession. Thus, there was no issue of fact to resolve concerning the diligence of any investigation by appellants. (See *First Fidelity Thrift & Loan Assn.* v. *Alliance Bank, supra,* 60 Cal.App.4th at p. 1445.)

The trial court did expressly find, both in its memorandum of decision following trial and in its statement of decision that Stewart Title, as the Frisones' agent, could not reasonably conclude that the collateral assignment of deed of trust conveyed to Western the full beneficial interest in the Greenwood deed of trust, which is the only circumstance that would permit the Frisones to have good faith encumbrancer status without further inquiry. Accordingly, on the state of the evidence in this case, the court's finding is in all practical respects a finding that Stewart Title and the Frisones were on reasonable notice of the need to investigate further the true meaning of the assignment to Western that appeared of record. (See *Buehler* v. *Oregon-Washington Plywood Corp., supra,* 17 Cal.3d at p. 529.)

For these reasons, we conclude the trial court's express finding on the reasonableness issue constitutes, by necessity, an implied finding that the Frisones were not good faith encumbrancers for value. As such, the court's failure to make an express finding on the good faith encumbrancer issue is harmless. (*Manson* v. *Reed* (1986) 186 Cal.App.3d 1493, 1504 [231 Cal.Rptr. 446]; see *Sperber* v. *Robinson, supra,* 26 Cal.App.4th at p. 745.) We therefore return to the question whether there was substantial evidence

to support the finding the trial court impliedly and of necessity made, namely, that the Frisones were not good faith encumbrancers for value because they had sufficient information to impose upon them a duty of inquiry concerning Western's power to subordinate the Greenwood deed of trust.

### E. *The Circumstances Should Have Prompted a Reasonable Investigation*

There are very few published cases addressing the question of what facts constitute sufficient notice to raise a duty of inquiry (see, e.g., *Kirby* v. *Palos Verdes Escrow Co., supra,* 183 Cal.App.3d at pp. 65-66; *Greiner* v. *Kirkpatrick* (1952) 109 Cal.App.2d 798, 801 [241 P.2d 564]), and none of those cases involves the meaning to be attributed to a "collateral assignment" of a deed of trust. (See 3 Miller & Starr, Cal. Real Estate, *supra,* § 8:62, pp. 388-390 [collecting cases]; see generally, Annot., Recorded Real Property Instrument as Charging Third Party With Constructive Notice of Provisions of Extrinsic Instrument Referred to Therein (1979) 89 A.L.R.3d 901.)

In *Bank One Texas* v. *Pollack* (1994) 24 Cal.App.4th 973 [29 Cal.Rptr.2d 510], the issue concerned a creditor's duty of inquiry under Civil Code section 19. The case involved a Texas bank that obtained a judgment in Texas against one Pollack for $1.2 million. Six years before entry of the judgment, Pollack had transferred all of his assets to an inter vivos trust over which he retained the power of revocation until his death. (24 Cal.App.4th at p. 976.) Pollack died in 1989 leaving an insolvent estate. In December of 1989, the Texas bank obtained a California judgment based on the Texas judgment; it duly recorded an abstract of the judgment against Pollack in Los Angeles County. (*Ibid.*)

Also in December of 1989, the Bank of Montreal settled certain claims against the inter vivos trust and Pollack's estate by accepting a promissory note secured, in part, by a deed of trust on Pollack's Los Angeles County residence, owned by the trust. (24 Cal.App.4th at p. 977.) After the trust defaulted on the Bank of Montreal loan and the bank conducted a foreclosure sale of the residence, a dispute arose between the two banks over the proceeds of the sale. (*Ibid.*)

The appellate court noted that pursuant to Probate Code former section 18201 (repealed by Stats. 1991, ch. 992, § 2, p. 4617), a creditor of an insolvent estate is entitled to levy directly on any assets held by a trust that the decedent had the power to revoke during his lifetime. The court further noted that "one is presumed to know the law" and, therefore, the Bank of Montreal was to be "charged with actual knowledge of Probate Code section 18201." (24 Cal.App.4th at p. 981.) The Bank of Montreal also had actual knowledge Pollack's estate was insolvent and that the trust was revocable

during Pollack's lifetime. (*Ibid.*) "Armed with this knowledge, a prudent person would ascertain whether there were liens recorded against the decedent or his estate [in addition to any liens recorded against the trust itself]. Accordingly, [the Bank of Montreal] is charged with constructive notice of the lien recorded by [the Texas bank against Pollack's estate], and it thus took the [deed of trust on the residence owned by the trust] with notice of another's rights." (*Id.* at p. 982.)

While the *Bank One* case obviously has many dissimilarities to the case now before us, it is similar to the present case with respect to the interaction between constructive knowledge of the law and actual knowledge of certain facts. In this case, the security transaction between Western and Triple A was governed by division 9 of the California Uniform Commercial Code (hereafter UCC). (Com. 4, 23C West's Ann. Cal. U. Com. Code (1990 ed.) foll. § 9102, subd. (3), p. 297; *Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 564 [122 Cal.Rptr. 119].) Accordingly, the Frisones and Stewart Title are charged with constructive knowledge of the relevant provisions of the UCC. (See *Bank One Texas* v. *Pollack*, *supra*, 24 Cal.App.4th at p. 981.) Section 9207, subdivision (1), of the UCC provides: "A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps *to preserve rights against prior parties* unless otherwise agreed." (Italics added.)

Armed with the knowledge that Western owned only a collateral or security interest in the Greenwood deed of trust, and charged with the knowledge that, unless otherwise agreed, the secured party had no power to subordinate the security interest against Greenwood (i.e., to fail "to preserve rights against prior parties"), a reasonable and prudent lender would have inquired about the exact nature of the security interest held by Western. (*Bank One Texas* v. *Pollack*, *supra*, 24 Cal.App.4th at p. 982; see also *Citizens Nat. Bank* v. *Davisson* (1913) 229 U.S. 212, 223 [33 S.Ct. 625, 629, 57 L.Ed. 1153].)[7] There is no evidence in the record that the Frisones or Stewart Title, as their agent, conducted such an inquiry. Accordingly, the Frisones are chargeable with notice of the terms of the security agreement; they were not entitled to rely on an interpretation of the collateral assignment that would impute to Western the authority to unilaterally subordinate the Greenwood deed of trust. (*Buehler* v. *Oregon-Washington Plywood Corp.*, *supra*, 17 Cal.3d at p. 529; see *Radunich* v. *Basso* (1965) 235

---

[7]As it turns out, the security agreement between Triple A and Western "otherwise agreed" that Western had no duty "to take any action to preserve any rights of or against any prior or other parties in connection with the Collateral . . . ." The present case, of course, does not involve any failure of Western to take action to preserve the priority of the Greenwood deed of trust but, rather, affirmative action it took to undermine the priority of that deed of trust.

Cal.App.2d 826, 835 [45 Cal.Rptr. 824].)[8] We now turn to the final question in this part of the inquiry, whether Western in fact—that is, based on what appellants would have discovered had they made reasonable inquiry—had the power under the security agreement to unilaterally subordinate the Greenwood deed of trust.

### F.   *The Security Agreement*

The parties agree that Western's actual rights in the Greenwood promissory note and deed of trust are those rights that exist as described in or as a result of the unrecorded security agreement executed by Triple A upon its assignment of the deed of trust to Western. After a brief historical digression, we will turn to the content of that security agreement.

Prior to the adoption of the UCC in 1963, it clearly was the law that, in the absence of an agreement between the parties (*Johnson* v. *Mortgage Guarantee Co.* (1931) 117 Cal.App. 416, 421-422 [4 P.2d 208]), a secured party did not have the power to "sell, compromise, or otherwise discharge the pledged debt, or the security therefor, without the consent of the pledgor." (*Revert* v. *Hesse* (1920) 184 Cal. 295, 300 [193 P. 943]; see former Civ. Code, § 3006 [repealed at the time of adoption of UCC].) (The secured party could, of course, assign *his own* interest in the collateral. (184 Cal. at p. 300.)) These rules reflected both the state of the common law and the law under former Civil Code section 3006. (*Traders Bank* v. *Wilcox* (1919) 42 Cal.App. 24, 27 [183 P. 256]; see generally, Rest., Security, §§ 20-23.) The rule was applicable both before any default by the pledgor (see generally, *Knudsen* v. *Hill* (1964) 227 Cal.App.2d 639 [38 Cal.Rptr. 859]) and after default. That is, even after default by the pledgor, the secured party was not entitled to sell the pledged note at a foreclosure sale, but instead was entitled only to collect the pledged note as it came due (*Traders Bank* v. *Wilcox*, *supra*, 42 Cal.App. at pp. 27-28 [noting certain exceptions not relevant here]), so long as the pledged note was not itself in default (*Beatty* v. *Pacific States S. & L. Co.* (1935) 4 Cal.App.2d 692, 699 [41 P.2d 378]).

---

[8]The Frisones also argue briefly that the trial court erred in granting summary adjudication against them on their cause of action against Western for breach of the subordination agreement, of which the Frisones were a third party beneficiary. Although the contention is not renewed in the Frisones' reply brief, we address it briefly. The alleged breach, in essence, was of the warranty of title: Western asserted in the subordination agreement that it was the owner of the deed of trust and had the power to subordinate it to the Frisones' lien. The warranty of title, in analogous circumstances involving the sale of goods under division 2 of the UCC, is excluded in "circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have." (Cal. U. Com. Code, § 2312.) An official comment to this section states that such circumstances include sales by "sheriffs, executors, foreclosing lienors and persons similarly situated." (Com. 5, 23A West's Ann. Cal. U. Com. Code (1964 ed.) foll § 2312, p. 243.) We conclude notice to appellants that Western held only a security interest in the deed of trust constituted circumstances excluding any assertion of warranty of title.

Where the secured party attempted to dispose of or impair the pledged debt, the pre-UCC rights of the pledgor were summarized as follows: "[I]f the pledgee sells or releases the debt or security otherwise than upon collection, the pledgor may set aside the sale or release, if other circumstances permit, or hold the pledgee for conversion." (*Beatty* v. *Pacific States S. & L. Co.*, *supra*, 4 Cal.App.2d at p. 699; see generally, Rest., Security, *supra*, § 24.)

With the adoption of the UCC in 1963 (see Stats. 1963, ch. 819), former Civil Code section 3006 was repealed (Stats. 1963, ch. 819, § 2, p. 1997) and a new rule was adopted: under UCC section 9504, regardless of the nature of the collateral pledged by a debtor, "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . . ." (Cal. U. Com. Code, § 9504, subd. (1).) "When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein . . . ," subject to certain conditions concerning good faith. (*Id.*, § 9504, subd. (4).)

Nevertheless, in order for a secured party to exercise its right to sell or otherwise dispose of the collateral under the UCC, the debtor must be "in default under a security agreement" for which the collateral is security. (Cal. U. Com. Code, § 9501, subd. (1); see Meadows, *Warranties of Title, Foreclosure Sales, and the Proposed Revision of U.C.C. § 9-504: Has the Pendulum Swung Too Far?* (1997) 65 Fordham L.Rev. 2419, 2419, fn. 2; see also *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576, 588 [70 Cal.Rptr. 654] [discussing similar restrictions on powers of pawn broker who receives notes as collateral].)

The parties have not cited any cases containing a modern, post-UCC statement of the powers of a pledgee of promissory notes when the pledgor is not in default. Our own research has not disclosed any case specifically discussing this issue.[9] The novel question we must address is, after adoption of the UCC, what is the relationship between the pledgor and pledgee prior to any default by the pledgor?

California Uniform Commercial Code section 1103 states: "Unless displaced by the particular provisions of this code, the principles of law and equity . . . shall supplement its provisions." The UCC affirmatively changed the law regarding postdefault sale or disposition of pledged debt instruments, permitting such sale where it had been previously prohibited. (See. Cal. Annot. to Proposed U. Com. Code (1960) Deering's Ann. Cal. U. Com. Code, § 9504 (1986 ed.) pp. 577-578.) However, the national and

---

[9]In *Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1010 [194 Cal.Rptr. 628], it seems assumed that the secured party was not entitled to sell the debt instruments pledged to it if the pledgor was not in default on the primary obligation.

California official comments to section 9207 both state that the code carries forward the common law in the *predefault* situation. (See Deering's Ann. Cal. U. Com. Code, § 9207, *supra*, at pp. 447-448.) Further, the purposes of and rationale for the prior law continue unabated under the UCC. (See, e.g., *Knudsen* v. *Hill, supra*, 227 Cal.App.2d at p. 645 [absence of ready market and difficulty of valuation of private debt obligations]; *Traders Bank* v. *Wilcox, supra*, 42 Cal.App. at p. 27 [same, and adequacy of other remedies].)

Accordingly, we conclude the common law restriction on predefault sale (*Traders Bank* v. *Wilcox, supra*, 42 Cal.App. at p. 29) of a pledged debt instrument continues to govern California security transactions. (See *Ibrahim* v. *Ford Motor Co.* (1989) 214 Cal.App.3d 878, 896-898 [263 Cal.Rptr. 64]; *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1008 [104 Cal.Rptr. 315, 59 A.L.R.3d 389].) Thus, in the absence of an agreement between Triple A and Western to the contrary, Western did not have the right unilaterally to sell, release or subordinate the Greenwood deed of trust.

Appellants contend the security agreement does in fact contain agreements that permitted Western to dispose of (subordinate) Triple A's interest in the Greenwood deed of trust. We reject this argument for three reasons.

First, the duty of reasonable care imposed by UCC section 9207, subdivision (1) "may not be disclaimed by agreement." (Com. 1, 23C West's Ann. Cal. Com. Code, *supra*, foll. § 9207, p. 405.) No one involved in this appeal has contended Western acted with reasonable care in executing the subordination agreement, and the trial court expressly found to the contrary. Therefore, even if the security agreement in *some* circumstances may have permitted Western to subordinate the deed of trust for legitimate purposes, as a matter of law the security agreement could not validly permit Western to subordinate the deed of trust with the lack of care it exercised in this case.

Second, it is irrelevant whether the security agreement may have permitted Western to subordinate the deed of trust if Triple A was in default on its promissory note to Western. There was no evidence Western was acting to foreclose on its interest in the collateral. In the absence of any evidence Western's actions were an attempt to enforce its postdefault rights, we decline to consider whether those rights, if exercised, would have been sufficient to justify Western's actions in executing the subordination agreement in the manner it did.

Third, as we have seen, in the absence of an express provision in the security agreement between a secured party and a debtor, the secured party does not have the power to sell, release, or otherwise impair a debt

obligation pledged to it as collateral. Accordingly, in the absence of some showing to the trial court that the security relationship had been modified by agreement of the parties, a finding by the trial court that Western had only a collateral security interest in the Greenwood note and deed of trust was conclusive of the issue of Western's predefault power, unilaterally, to subordinate the deed of trust to the Frisones' lien.

On appeal, the Frisones assert that "[n]o provision of the security agreement . . . precluded the Bank's power to subordinate the deed of trust." They then attempt to show that the security agreement granted similar powers to Western, powers that in some instances might be viewed as broader than the power to subordinate the deed of trust. The Frisones do not, however, point to anything in the security agreement or elsewhere that *granted* to Western the power to subordinate, unilaterally, the Greenwood deed of trust. In the absence of such an affirmative showing, for the reasons stated above, Western's status as a "secured party" prevented it from validly subordinating the deed of trust. Triple A was entitled to have the subordination agreement declared void (*Revert* v. *Hesse, supra,* 184 Cal. at p. 300) and that is, in effect, the relief the court granted. As a result, the judgment in this regard must be affirmed.

G.   *Triple A's Attorney Fees as Damages Payable by Stewart Title**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II.   *The Western Appeal**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Disposition*

The judgment is affirmed. Costs and attorney fees on appeal are awarded to Triple A from Stewart Title; costs on appeal are awarded to Triple A from the Frisones; costs on account of Western's appeal are awarded to Stewart Title as respondent from Western. As a result of our disposition of their appeals, the Frisones and Stewart Title's petition for writ of mandate or other appropriate relief is moot. The petition is denied.

Ardaiz, P. J., and Wiseman, J., concurred.

---

*See footnote, *ante*, page 520.