Filed 8/30/22 Sarkany v. West CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JENNIFER SARKANY et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br>CHRISTIE WEST et al.,<br><br>        Defendants and Appellants. | A160573<br><br>(San Francisco County<br>Super. Ct. No. CGC-18-571355) |

Four residential tenants sued their landlord, Christie West (Christie), and her son, Timothy West (Timothy), whose name was on the deed of the rented premises during part of plaintiffs' tenancy.[1]

Judgment was entered for plaintiffs after a weeks-long jury trial. The trial court subsequently granted a new trial for Timothy based on the fact that a document that the trial court had excluded from evidence somehow made its way into the exhibit binders that went into the jury room when the jury was excused to deliberate. The court denied a new trial for Christie,

---

[1] This is the first of three opinions we file today arising from the underlying dispute. (See *Sarkany v. West* (Aug. 30, 2022, A161728) [nonpub. opn.]; *Sarkany v. West* (Aug. 30, 2022, A162441).) Because the defendants have the same last name, we refer to them by their first names. We intend no disrespect.

1

denied Timothy's motion for JNOV, and denied defendants' motion for terminating sanctions.

Defendants now appeal from the judgment and the orders denying Christie's new trial motion, Timothy's motion for JNOV, and their motion for terminating sanctions. Plaintiffs cross-appeal from the order granting Timothy's new trial motion. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the First Amended Complaint, plaintiffs Jennifer Sarkany, Ramsey Abouremeleh, Sandra Fierro, and Nina Robin (collectively, plaintiffs) signed one-year residential lease agreements with Christie to rent part of a single-family house in San Francisco (the property) starting February 1, 2018. Christie managed the property and lived there as well.[2] According to the complaint, Christie owned the property when plaintiffs signed the leases, but a few months later transferred the property to her son Timothy. Plaintiffs alleged that although the deed was in Timothy's name, Christie claimed that she had given title to Timothy for convenience and that she was the true owner of the property.

Plaintiffs alleged that Christie negligently operated the premises, that Christie was Timothy's agent, and that Timothy negligently allowed her to rent and manage the property. They alleged that the space they occupied suffered from defective plumbing, rodent infestation, rotted windows, water intrusion, faulty appliances, and faulty electrical outlets, and that the common areas and yard were not maintained. They alleged that defendants

---

[2] Our discussion of the factual background draws on the complaint because the parties' briefs do not include adequate summaries of the evidence produced at trial. In their brief, plaintiffs represent that they rented an apartment consisting of the top two floors of the house, and that Christie lived in an in-law apartment on the ground floor.

2

failed to make repairs to the property after repeated requests from plaintiffs, delayed repairs, and failed to complete repairs after they were started.

Plaintiffs alleged they were forced to pay utility bills for the entire property, including the space that Christie occupied. They alleged that Christie harassed and intimidated them to force them to vacate the premises before the end of their leases; that she took steps to jeopardize their careers; that she entered their space without notice or cause; that because of her actions they lived in a state of constant fear and worry; and that they vacated the premises at the end of October 2018 because of her interference. They also alleged that defendants acted in bad faith by withholding their security deposits.

Plaintiffs brought claims for declaratory relief, negligence, constructive eviction, breach of the implied covenant of quiet enjoyment, breach of the implied warranty of habitability, and violations of the Civil Code and the San Francisco Rent Stabilization and Arbitration Ordinance (SFRO), and sought compensatory and punitive damages. Just before trial, plaintiffs dismissed without prejudice their causes of action for declaratory relief and for breach of the covenants of quiet enjoyment and warranty of habitability.

The case was tried to a jury over several weeks in December 2019 and January 2020, with the Honorable Kathleen A. Kelly presiding.

In the first phase of the trial, with witness testimony alone lasting 16 court days, the jury heard testimony from more than 30 witnesses (including the parties, non-party fact witnesses, and experts), reviewed hundreds of exhibits, and ultimately returned verdicts for the plaintiffs. The jury found each defendant liable to each plaintiff for multiple violations of SFRO section 37.10B, entitled "Tenant Harassment"; found that each defendant acted in bad faith and in knowing violation or reckless disregard of the ordinance;

3

found that each defendant violated section 37.10B with malice, oppression, or fraud; and awarded each plaintiff damages on that cause of action from each defendant. The jury found Christie liable to Abouremeleh for violating section 37.9 of the SFRO, entitled "Evictions," found that she acted in reckless or knowing disregard of the ordinance, and awarded him damages on that cause of action. The jury found each defendant liable to each plaintiff for violating Civil Code section 1942.4, which prohibits a landlord from demanding or collecting rent for a substandard dwelling in certain circumstances, and awarded each plaintiff damages from each defendant on that cause of action. The jury found each defendant liable to each plaintiff for violating Civil Code section 1950.5, which governs security deposits paid by residential tenants; found that the defendants withheld the security deposits in bad faith; and awarded damages to each defendant on that cause of action, but only from Christie. The jury found Timothy liable to each plaintiff for negligence but awarded no damages on that cause of action. And the jury found Christie liable to Fierro and Robin (but not Abouremeleh or Sarkany) for constructive eviction and awarded Fierro and Robin damages on that cause of action.

In the second phase of the trial, which lasted two days, the jury awarded each plaintiff punitive damages in various amounts from each defendant for the violations of SFRO section 37.10B. The jury found that Timothy's liability for punitive damages arose from his liability as a principal for the actions of his agent, Christie, and not from his own actions.

After judgment on the verdicts was entered, defendants moved for new trial and/or terminating sanctions and moved for JNOV as to Timothy. Of particular importance for this appeal, defendants argued that a new trial was required because a document that the trial court had excluded from evidence

4

as more prejudicial than probative (the *Cochrane* complaint) was nevertheless included in the jury's exhibit binders and considered by the jurors during their deliberation. The court determined that the jury's consideration of the *Cochrane* complaint was the result of court error, and that the error was so prejudicial as to Timothy West as to require a new trial for him. The court concluded that the error did not warrant a new trial for Christie West, and rejected the defendants' other new trial arguments, as well as their motion for terminating sanctions.

Accordingly, the trial court issued an order denying Christie's motion for new trial; granting Timothy's motion for new trial; and denying the defendants' terminating sanctions.[3] The court also denied Timothy's motion for JNOV as moot in light of its grant of his new trial motion. Defendants appealed, and plaintiffs cross-appealed.

## DISCUSSION

We begin by summarizing some basic principles of appellate review. Next, we address the parties' challenges to the trial court's new trial rulings, focusing first on the jury's consideration of the *Cochrane* complaint, which underlies arguments in plaintiffs' cross-appeal of the grant of a new trial to Timothy and in defendants' appeal of the denial of a new trial to Christie. We then address other arguments made by defendants in connection with denial of a new trial to Christie. Finally, we turn to defendants' arguments

---

[3] In ruling on Christie West's new trial motion, the trial court found that the punitive damages award against her was excessive in light of her ability to pay. The denial of her new trial motion was therefore conditioned on a remittitur as to punitive damages, to which plaintiffs consented. (See Code Civ. Proc., § 657, subd. (5) [authorizing grant of new trial where excessive or inadequate damages have been awarded].)

5

regarding the request for terminating sanctions and Timothy's motion for JNOV.

A.    *Principles of Appellate Review*

An order challenged on appeal is presumed to be correct, and it is the burden of the appellant, or cross-appellant, as the case may be, to affirmatively show that the trial court erred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  An appellant must "support claims of error with meaningful argument and citation to authority. [Citations.]  When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)  We disregard purported incorporations by reference of arguments made in submissions to the trial court.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20 (*Soukup*); see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 9:30.1 [incorporation of such arguments is "entirely *inappropriate*"].)

Appellants must support their arguments by appropriate reference to the appellate record.  (*Air Couriers International v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 (*Air Couriers*).)  This requires citation to "the particular portion of the record supporting each assertion made."  (*Williams v. Williams* (1971) 14 Cal.App.3d 560, 565; see Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C) [appellant's opening brief must include a summary of significant facts limited to matters in the record, with any reference to a matter in the record supported by a citation to the volume and page number of the record].)  We are not required to search the record for evidence, and we may disregard unsupported factual assertions.  (*Air Couriers, supra*, 150 Cal.App.4th at p. 928.)  Failure to provide adequate

6

record citations forfeits a contention of error. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).) This principle is particularly important in light of the voluminous record in this case.[4] Notably, neither plaintiffs nor defendants have provided this court with a summary of the evidence that was produced at the lengthy trial. As a result, we are essentially bystanders to a long-standing dispute between the parties, left to glean bits and pieces of the underlying case from briefs that assume we have more knowledge of the facts than the parties have set forth.

We review challenges to findings of fact for substantial evidence, which means we examine the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences and resolving all conflicts in its favor. (*People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1567.) In any substantial evidence challenge, appellants must " 'set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*).)

Finally, it is the burden of the appellant to show prejudice from any error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century Surety Co.*).) The California Constitution permits reversal only if "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The Code of Civil Procedure provides that we may reverse judgments and orders only if the record shows that an error was "prejudicial" and caused appellant "substantial injury," and only if, absent

---

[4] The reporter's transcript is over 4,700 pages long. The clerk's transcript is over 9,000 pages, and a supplemental clerk's transcript is over 2,800 pages. In addition, there are seven volumes of trial exhibits, totaling over 1,000 pages.

the error, "a different result would have been probable." (Code. Civ. Proc., § 475.[5]) To show prejudice, appellants must do more than simply state that they were prejudiced and contend that absent the error, they could reasonably expect to have obtained a more favorable outcome. (See *Century Surety Co.*, *supra*, 139 Cal.App.4th at p. 963 [appellant must provide legal argument as to how the error was prejudicial].)

B.     *New Trial Motions*

    1.     *Applicable Law and Standard of Review*

Section 657 of the Code of Civil Procedure provides in relevant part: "The verdict may be vacated . . . in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial. [¶] 2. Misconduct of the jury . . . ." [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against." (Code Civ. Proc., § 657.)

We review a trial court ruling on a new trial motion for abuse of discretion. (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 (*Jiminez*).) "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a

_____

[5] Further unspecified statutory references are to the Code of Civil Procedure.

reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." (*Ibid.*)

2.    *Additional Background on the Cochrane Complaint*

The trial court granted a pretrial motion by defendants under Evidence Code section 352 to exclude evidence of prior lawsuits filed against the defendants by former tenants. Among the evidence the court excluded was the *Cochrane* complaint, which had been filed against Christie and Timothy by different former tenants. The *Cochrane* complaint alleged substantially similar claims to those at issue in plaintiffs' case and was settled and dismissed without any findings or admissions of liability.

In its order granting Timothy a new trial, the trial court described how the exhibit mix-up came to light: "At the conclusion of the trial, counsel met with a number of jurors. Upon meeting with the jurors, counsel, and later the Court, were apprised for the first time that the Cochrane complaint had inexplicably been mislabeled as Exhibit 152 and went into the jury room with properly admitted exhibits . . . [and] was considered by the jury. The Cochrane complaint was initially identified *by* Plaintiffs as Plaintiffs' Exhibit 153 for identification. [Citation.] The substance of the Cochrane complaint was not discussed by the Court and counsel in the presence of the jury and was never admitted. In fact, the Court recorded Exhibit 152—not as the Cochrane complaint—but as a police report . . ., which was admitted into evidence. [Citation.]

"Significantly, . . . during jury deliberations, the jury sent a note to the Court asking: 'Was this supposed to be in evidence? We don't recall this [*sic*] be reviewed. Exhibit 152.' "

The record reflects that a copy of Exhibit 152 was not included with the written jury note asking about its bona fides. The court reviewed the jury

9

question with counsel, who apparently raised no concerns about the exhibit. On the basis of the deputy clerk's notes identifying the marked and admitted exhibits, the court believed Exhibit 152 to be a police report, and, with the agreement of counsel, responded to the jury question: "Yes. Exhibit 152 is in evidence."

With their new trial motion, defendants submitted four juror declarations indicating that the jury had considered the *Cochrane* complaint. The trial court concluded that it was "inexplicable . . . how the Cochrane complaint was mismarked and went into the jury room." The court wrote that throughout the trial it had ordered counsel to meet and confer to review admitted exhibits and verify the accuracy of the compilation of admitted exhibits. The court recounted the finger-pointing between counsel: defendants asserted plaintiffs were responsible for the error, and plaintiffs denied the accusation. In the end, the court treated the mismarking of the *Cochrane* exhibit and its inclusion in the exhibits provided to the jury during deliberation as court error, rejecting defendants' argument that the jury's consideration of the *Cochrane* complaint constituted juror misconduct under Code of Civil Procedure section 657.

Citing *People v. Gamache* (2010) 48 Cal.4th 347, 398 (*Gamache*), the court noted that in the absence of juror misconduct, which gives rise to a presumption of prejudice that must be rebutted, it remained for defendants to show prejudice from the jury's consideration of the *Cochrane* complaint. The court concluded that defendants had met their burden of showing prejudice with respect to Timothy, and granted Timothy a new trial under section 657, subdivisions (1) (irregularity in proceedings) and (3) (accident or surprise). The court denied the motion for new trial as to Christie.

10

The court reasoned that the evidence at trial against Christie—as opposed to the evidence against Timothy—"was so overwhelming" that there was no reasonable possibility that the outcome of the case would have been different as to her if the jury had not seen the *Cochrane* complaint. The court found that plaintiffs had presented "considerable evidence as to prior complaints and notice of [Christie's] conduct," and there was "considerably less direct evidence as to [Timothy], which makes the juror declarations and the admission of the Cochrane complaint so material and prejudicial as to him." The court explained that the testimony the jury heard from other tenants who had previously resided at the property, "some positive, some negative, was focused primarily on [Christie], and was subject to thorough cross examination," unlike the *Cochrane* complaint, which inexplicably made its way into the jury room and was never the subject of any testimony, let alone cross-examination.

3. *Plaintiffs' Challenge to Grant of New Trial for Timothy*

Plaintiffs raise three challenges to the trial court's grant of a new trial as to Timothy on account of the *Cochrane* complaint. We consider the arguments in turn.

a. *Juror Declarations*

First, plaintiffs argue that the new trial order improperly relied on inadmissible juror declarations describing the jurors' mental processes. The argument is unpersuasive.

Under Evidence Code section 1150, subdivision (a), juror declarations are admissible to show overt conduct that is " ' "open to sight, hearing, and the other senses and thus subject to corroboration." ' "[6] (*People v. Engstrom*

<hr/>

[6] Evidence Code section 1150 provides that "[u]on an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to

11

(2011) 201 Cal.App.4th 174, 183.) But juror declarations are inadmissible to the extent they purport to show the significance that jurors attached to the evidence. (*People v. Collins* (2010) 49 Cal.4th 175, 250.) When juror declarations contain both admissible and inadmissible statements, the admissible portions may be considered by the trial court. (*Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 681, fn. 1.)

Here, the trial court admitted into evidence the four juror declarations that defendants submitted with their new trial motion. Plaintiffs point to inadmissible statements in the declarations. For example, one juror declared that the *Cochrane* complaint "was a significant reason we awarded damages against [Timothy] in both phases of the trial." Another declared that the *Cochrane* complaint made him more confident in finding for plaintiffs, and also described why he did not believe that consideration of the *Cochrane* complaint had "much effect" on his decision regarding damages. Even if these portions of the declarations are inadmissible, plaintiffs are incorrect that eliminating the portions of the declarations that describe the jurors' mental processes leaves nothing to support the new trial order. Although one of the declarations simply describes the effect of the *Cochrane* complaint on that juror's verdict (and is inadmissible on that basis), the other three declarations state that when the *Cochrane* complaint came to the jury's attention, the jurors sent a note to the court about it because the jurors did not recognize it or recall any discussion of it at trial, and when the court

---

statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

responded that the document had been properly included as an exhibit, the jurors considered the complaint in connection with their verdict. The fact of the jurors' review or consideration of the complaint—that is, did they or did they not consider it upon receiving the court's response to their question—is conduct open to the senses.

b.    *Alleged Negligence of Defendants' Counsel*

Plaintiffs contend that the motion for new trial should have been denied because defendants' counsel were negligent in failing to comply with the trial court's order to review the trial exhibits and in failing to look at the actual exhibit at issue when the jury asked the court about "Exhibit 152." Plaintiffs argue that ordinary prudence on the part of defense counsel would have kept the jury from reviewing the *Cochrane* complaint, and that defendants' failure to act prudently bars a new trial order under section 657, subdivision (3), which authorizes a new trial in the event of "[a]ccident or surprise, which ordinary prudence could not have guarded against."

Leaving aside plaintiffs' apparent refusal to accept any of the responsibility for including an exhibit that was plainly marked "Plaintiff's Exhibit 152," while attempting to blame the error entirely on the defendants, the argument lacks any merit. In granting a new trial under section 657, subdivision (3), the trial court implicitly found that defendants' counsel acted with ordinary prudence under the circumstances. Plaintiffs' conclusory statement that the trial court could not have made this implicit finding is unpersuasive. Further plaintiffs cite no authority holding that a finding of prudence on the part of defendants' counsel is required when a trial court grants a new trial under section 657, subdivision (1) on the basis of an irregularity in proceedings that the court finds has resulted from court error. Nor is plaintiffs' argument advanced by their citation of *Slemons v. Paterson*

13

(1939) 14 Cal.2d 612 for the proposition that section 657 "makes no provision for a new trial on account of mistake of law of a party or his attorney." (*Id.* at p. 615.) No mistake of law is at issue here.

   c. *Prejudicial Effect of Cochrane Complaint*

  Plaintiffs argue that the trial court used the wrong legal standard in determining whether the jury's consideration of the *Cochrane* complaint was prejudicial as to Timothy, and that if the correct standard had been used, the trial court would have denied the new trial motion.

  We reject this argument because plaintiffs have not shown that the motion would have been denied under the correct standard.

  Once the trial court determined that the jury had reviewed the *Cochrane* complaint, defendants had to establish that it was reasonably probable the jury would have reached a more favorable verdict if the complaint had not been reviewed. (*Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 375-376.) In the new trial order granting Timothy the extraordinary remedy of a new trial, the trial court correctly recognized that here, in the absence of a finding of juror misconduct, defendants were required to demonstrate prejudice under the usual standard for ordinary trial error, and the trial court correctly enunciated the standard (that defendants were required to show a reasonable *probability* of a more favorable verdict if the excluded evidence had not been considered) with citations to two California Supreme Court Cases (*People v. Cooper* (1991) 53 Cal.3d 771 and *People v. Clair* (1992) 2 Cal.4th 629). But in that same order, the court wrote, "There is certainly a reasonable *possibility* the error affected the verdict as to him." (Italics added.)

  Reading the order as a whole, and bearing in mind that the existence of a reasonable possibility does not preclude the existence of a reasonable

14

probability, it is not clear to us that the trial court applied the wrong legal standard. But even if the court had erred in that respect, plaintiffs have not demonstrated the "manifest and unmistakable abuse of discretion" (*Jiminez*, *supra*, 4 Cal.3d at p. 387) that would lead us to reverse the new trial order.

That is because plaintiffs fail to show that the trial court erred when it determined that the jury's review of the *Cochrane* complaint was so prejudicial as to warrant a new trial for Timothy. Although plaintiffs claim to show that "it is not reasonably probable that a result more favorable to [Timothy] would have been obtained absent the error," they have forfeited this argument by their failure to fairly summarize the relevant evidence. Plaintiffs assert that the *Cochrane* complaint mentions Timothy in just two paragraphs, one stating that he owned the property and one stating that Christie made representations on his behalf. Plaintiffs contend that because those allegations were not disputed and because the *Cochrane* complaint concerned events that "took place many years before [defendants'] tenancy," the *Cochrane* complaint "did not impact the analysis of what took place during [defendants'] tenancy." And that is all plaintiffs have to say about the *Cochrane* complaint—a document that the trial court (which had heard all the testimony and reviewed all the evidence that was produced in the course of a 17-day trial) concluded was "so material and prejudicial" as to Timothy.

Plaintiffs mischaracterize the record. It is true that Timothy's name appears in just two paragraphs of the 13-page *Cochrane* complaint, apart from the caption. But those are not the only allegations in the complaint pertaining to Timothy. The *Cochrane* complaint alleged that *all* the named defendants, thus including Timothy, refused to make repairs to the property despite having actual and constructive notice of particular habitability defects that were set forth in some detail. The *Cochrane* complaint alleged

15

that all the defendants attempted to recover possession of the property by failing to make repairs and by harassing the plaintiffs, and that the plaintiffs left the property involuntarily because of the defendants' actions.

Further, although plaintiffs purport to summarize evidence admitted at trial that "directly implicated" Timothy, their summary, which jumps from topic to topic, is nearly impossible to follow, and citations to the voluminous record are lacking in key places. This significantly restricts our ability to review the record.

Because plaintiffs fail to discuss the substance of the *Cochrane* complaint and the substance of the other evidence against Timothy, we disregard their conclusory contention that "when viewing all of the evidence against Timothy West, it is not reasonably probable that the admission of the Cochrane complaint had any effect on the outcome."

This is a case in which a most experienced trial judge determined that the jury's review of a prejudicial document necessitated a new trial for Timothy. An order granting a new trial is not made lightly, particularly after a 17-day trial with numerous witnesses and hundreds of exhibits. Plaintiffs fail to show that the trial court abused its discretion here.

4.      *Defendants' Challenge to Denial of New Trial for Christie*

        a.      *Consideration of the Cochrane Complaint*

Defendants argue that in denying Christie a new trial, the court erred by declining to find that the review of the *Cochrane* complaint was juror misconduct. The argument is confusing; as best we understand it, defendants argue that the presentation of prejudicial out-of-court evidence or testimony (such as the *Cochrane* complaint here), is enough to show juror misconduct.

*Gamache* is to the contrary: when extrinsic evidence, including evidence that has been excluded by the court as unduly prejudicial, "finds its

way into the jury room through party or court error" there is no juror misconduct. (*Gamache, supra,* 48 Cal.4th at pp. 397-398.) The juror misconduct cases cited by defendants are distinguishable. In *McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, the juror misconduct consisted of a juror making comments during deliberation that amounted to providing his own expert opinion, as a professional transportation consultant, concerning the placement of gates at a grade crossing. (*Id.* at pp. 263-264.) And in *Smith v. Covell* (1980) 100 Cal.App.3d 947, the juror misconduct consisted of a juror concealing his biases on voir dire and communicating to the jury, both before and during deliberation, information about his personal experience of back injury. (*Id.* at pp. 952-953.) Neither of those cases is anything like the case here.

Defendants further contend that even if the jury's consideration of the *Cochrane* complaint was not juror misconduct, the complaint was so prejudicial as to require a new trial for Christie. But defendants do not even attempt to show how the outcome of the trial would have been different as to Christie if the jury had not considered the *Cochrane* complaint. (See *Gamache, supra,* 48 Cal.4th at pp. 397, 399 [in the absence of juror misconduct, no presumption of prejudice arises from juror's consideration of excluded evidence; injured party must demonstrate error].) Defendants do not address the trial court's finding that the evidence about Christie that was properly before the jury "was so overwhelming" that there was no reasonable possibility that the *Cochrane* complaint made any difference to the verdict against her. By failing to discuss any of the evidence pertaining to Christie that was presented at trial, defendants have forfeited any claim that Christie was prejudiced by the trial court's denial of her new trial motion.

17

b.      *Evidence of Disputed Title Issues*

Apart from issues arising from the *Cochrane* complaint, defendants argue that Christie is entitled to a new trial because the trial court admitted evidence of disputed title issues that confused the jury and resulted in inconsistent verdicts in the two phases of the trial.  We are not persuaded.

As an initial matter, defendants fail to explain how there is any inconsistency between the jury finding that Timothy owned the property during the plaintiffs' 2018 tenancy (a finding that underlies the verdict in the first phase of the trial) and the finding that as of January 2020 Christie owned the property (a finding that underlies the verdict in the second phase of the trial).

Regardless, the argument has been forfeited because defendants fail to provide record citations to support the underlying facts.  (*Duarte, supra*, 72 Cal.App.4th at p. 856.)  The argument refers to "numerous confusing exhibits" about title to the property that were admitted at trial, but does not provide citations to any of them.  It is not enough for defendants to assert that the attorney's testimony was confusing to the jury:  defendants must point us to the potentially confusing testimony, explain why it was confusing, and provide evidence to show how the jury verdict reflects that confusion.  Apart from the lack of appropriate citation to the record, we disregard the argument because the contention is not supported by reasoned legal argument or citations to authority.  (*Allen, supra,* 234 Cal.App.4th at p. 52.)  Defendants' failure to do so forfeits the argument.

c.      *Elizondo Testimony*

Defendants further argue that Christie should have been granted a new trial because she was prejudiced by the trial court's erroneous decision to

18

allow testimony from Paul Elizondo, a psychiatrist retained by plaintiffs as an expert. This argument is forfeited.

First, defendants fail to present legal argument that Dr. Elizondo's testimony should have been excluded. Instead, they simply refer to their motion in limine concerning his testimony, and say they "stand by" the argument made there. We disregard this purported incorporation by reference of argument presented below. (*Soukup*, *supra*, 39 Cal.4th at p. 294, fn. 20.)

Further, defendants fail to describe and provide citations to Dr. Elizondo's testimony before the jury. And although defendants contend that Dr. Elizondo's testimony was cumulative to plaintiffs' extensive testimony about emotional distress, they do not describe the plaintiffs' testimony, either, or provide record citations. It is not enough for defendants to simply state that Dr. Elizondo's testimony was "cumulative, unnecessary, an[d] improper": they must show how they could have expected a more favorable outcome absent his testimony, which they fail to do. (*Century Surety Co.*, *supra*, 139 Cal.App.4th at p. 963.)

Even if defendants had shown that Dr. Elizondo's testimony was been erroneously admitted, their failure to set forth or support the facts underlying their claim and their failure to support their claim with reasoned legal argument or citations to authority means that they have forfeited any argument that his testimony required the trial court to grant their new trial motion. (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928 [forfeiture from unsupported factual assertions]; (*Allen, supra,* 234 Cal.App.4th at p. 52 [forfeiture from lack of reasoned legal argument or citations to authority].)

19

C.     *Motions for Terminating Sanctions*

Defendants argue that plaintiffs' abusive discovery tactics and trial misconduct justified the imposition of terminating sanctions. Defendants point out that they brought two motions for terminating sanctions, both of which were denied. But, as we shall explain, they do not demonstrate that the denial of either motion amounted to reversible error.

1.     *Pretrial Motion for Terminating Sanctions*

Defendants brought a pretrial motion for terminating sanctions that was heard by the Honorable Charles F. Haines. In that motion, defendants sought terminating sanctions against one of the plaintiffs (Ramsey Abouremeleh) on the grounds that plaintiffs' counsel intimidated a witness to prevent that witness from testifying, in violation of Penal Code section 136.1. The court declined to grant terminating sanctions, but imposed monetary sanctions and an issue preclusion sanction. In his written order, Judge Haines suggested that CACI instruction No. 204 on the willful suppression of evidence "may be modified to inform a jury plaintiff intentionally suppressed defense efforts to obtain evidence on Abouremeleh's truthfulness, as well as evidence which would bolster [a witness's] credibility," but he stated that "[t]his is merely a suggestion for the trial judge."

Defendants do not present any argument that Judge Haines erred in denying their motion for terminating sanctions. Instead, they contend that they submitted numerous CACI No. 204 instructions that were rejected by Judge Kelly, who presided over the trial, and that the court's refusal to give such an instruction is an additional ground for a new trial.

However, rather than citing to specific pages of the record showing the instructions that were proposed and the trial court's rejection of those proposals, defendants provide an undifferentiated citation to "CT Vol 21 5953

20

– Vol 26 7449," representing almost 1,500 pages of the Clerk's Transcript. Nor do defendants point us to the instructions that were actually given to the jury. We therefore disregard defendants' contentions concerning their proposed instructions. (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928; Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)2)(C).)

Further, defendants provide no legal argument or authority to support a claim that it was error for the trial court to reject their proposed instructions. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.) Nor do they show any prejudice from the trial court's refusal to give their proposed instructions. (*Century Surety Co., supra,* 139 Cal.App.4th at p. 963.) Instead, they simply state that it is impossible to know whether the verdict against Christie West would have been different if an instruction had been given.

In short, defendants have forfeited any argument concerning jury instructions.

2.    *Posttrial Motion for Terminating Sanctions*

After the trial, defendants filed a renewed motion for terminating sanctions, which the trial court denied. Defendants contend that the evidence they submitted in support of that motion would support an award of terminating sanctions, but they provide no argument that it was error for the trial court to deny the motion. We will not supply one for them. (*Allen*, *supra*, 234 Cal.App.4th at p. 52 [appellate court is "not required to examine undeveloped claims or to supply arguments for the litigants"].)

Defendants note that although they requested a statement of decision as to their motion for terminating sanctions, the trial court declined to provide one. Defendants suggest this is reversible error, citing *Triple A Management Co., Inc. v. Frisone* (1999) 69 Cal.App.4th 520 where the Court of Appeal noted that "[f]ailure to determine a material issue in a statement of

21

decision *can, in some circumstances, be reversible error* if there is evidence that would support a finding in the opposing party's favor." (*Id*. at p. 536, italics added.) That case does not help the defendants, because they fail to show that the trial court's failure to provide a statement of decision in the circumstances here was error.

D.   *Timothy's Motion for JNOV*

We review a ruling on a motion for JNOV " 'us[ing] the same standard the trial court uses in ruling on the motion, by determining whether it appears from the record, viewed most favorably to the party securing the verdict, that any substantial evidence supports the verdict.' " (*Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 309.) If there is any substantial evidence, or if there are reasonable inferences to be drawn from the evidence, in support of the verdict, a motion for JNOV should be denied. (*Ibid*.)

The trial court concluded that because it had granted Timothy a new trial, his motion for JNOV was moot. This was error. There is no inconsistency in granting a new trial while denying a motion for JNOV on the merits (*Jones v. Evans* (1970) 4 Cal.App.3d 115, 121), nor in granting both a new trial motion and a motion for JNOV. (*Rosenbaum v. Security Pacific Corp*. (1996) 43 Cal.App.4th 1084, 1086, fn. 1.)

To show prejudice from the trial court's error in denying the JNOV motion as moot, defendants must show that the motion for JNOV should have been granted. This requires a showing that no substantial evidence supports the verdict, which requires discussion of all the evidence at issue. But there is no such discussion in defendants' opening brief: defendants' repeated contention that there is no substantial evidence to support the verdict against Timothy does not substitute for discussion of the evidence at

issue.  By failing to set forth all the material evidence pertaining to Timothy's liability, defendants have forfeited their challenge to the denial of the JNOV motion.  (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881.)

## DISPOSITION

The judgment and challenged orders are affirmed.  The parties shall bear their own costs on appeal.

_____

Miller, J.


WE CONCUR:


_____

Stewart, Acting P.J.


_____

Mayfield, J.*


A160573, *Sarkany et al. v. West et al.*

---

\* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.